## Tolly, et al. v. Champion, Executrix.

(Decided March 25, 1921.)

### Appeal from Livingstone Circuit Court.

1. Executors and Administrators—Appraisement—Sale Bill.—It is the duty of the personal representative to file an appraisement of the property of the decedent; to prepare and file a sale bill of his personal property; to keep a record of all claims paid and to require each claimant to prove his claim according to law; to take receipts and keep an account of all debts and credits and to do all things necessary to preserve a written memorial of his acts and doings; but, since statutory proof of claims is intended to furnish to the personal representative a guide in the payment of claims against his decedent, if he makes payment without such proof, and the claim is valid and just, he will be allowed credit therefor in a suit to settle the estate.

2. Witnesses—Husband or Wife Excluded From Testifying.—A wife is an incompetent witness to establish her claim against her deceased husband growing out of a transaction between them while the marital relation existed, especially so, when the transaction concerned property of the wife to which the husband was entitled under his marital rights; but if the objection to the testimony of the wife is not presented to the trial court and is not passed on by the court it will be considered as waived and the testimony of the wife will be given the same weight and credit as though she were not an incompetent witness.

3. Executors and Administrators—Husband and Wife—Rents.—Before the passage of the Weisinger Act in 1894 a husband was entitled to collect and appropriate rents from his wife's general real estate, and this right continued after the passage of that act if the relation existed and the property was acquired prior thereto. However, the husband might waive such right and agree to hold the rent as trustee for his wife, which agreement, if satisfactorily shown, will be enforced against the husband's estate in favor of the wife after his death.

C. H. WILSON and J. R. WELLS for appellants.

CHAS. FERGUSON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming. in part and reversing in part.

The appellee, Sarah E. Champion, who was about 70 years of age and who was the widow of W. S. Champion, filed this action in the court below, in both her representative and individual capacities, against the collateral kindred of her deceased husband to obtain a settlement of her accounts as executrix of his will, and to settle his estate, and to this end she prayed that a tract of land situated in Livingston county, containing about 200 acres, be sold for the payment of debts. She asserted in her petition a number of claims against her decedent, which were alleged to have been paid by her in her representative capacity, and asked credit for each of them. She also asserted in her individual right a number of claims, aggregating about $6,000.00, which she averred that her deceased husband owed her and which he held as trustee for her use and benefit and that each of them was wholly unpaid at the time of his death. The answer was a denial of all the allegations in the petition. The cause was referred to the master commissioner to take proof and report the assets and liabilities of the estate. He afterwards made a report showing that the executrix had realized from personal property of the decedent sold by her the sum of $400.00, and that the decedent at the time of his death had on deposit in bank $259.58, making a total sum for the payment of debts of $659.58. No account was taken of some bank stock and some stock in the Henry Clay Fire Insurance Company, because, in the opinion of the commissioner, the will of the decedent prevented testatrix from selling any of it for the payment of debts. The commissioner in his report of claims classified them into three divisions, A, B and C. Class A (six in number) included claims against the decedent evidenced by note or judgment; class C (four in number) included claims against decedent due by account, and class B (seven in number) were claims asserted by the widow as being due her individually from her husband and which were created between their marriage in 1881 and his death in 1917. Exceptions were filed to every claim reported by the commissioner and upon trial thereof, after the taking of considerable testimony, they were each overruled except as to one-half of claim A-5, the total amount of which was $119.82. A judgment was rendered charg-

ing the executrix with only the amount hereinbefore stated and crediting her with all the claims in classes A and C, and adjudging to her each of the claims in class B, and directed the land to be sold and all of the allowed claims paid; and, since the will devised the land to the widow for her life, the judgment directed that she be given her life interest according to the mortality tables in the remainder of the proceeds of the sale of the farm, after the payment of the allowed claims, including her own, and what was left the judgment directed to be divided between defendants and appellants (collateral kindred of the deceased) as their interest might appear.

Complaining of the judgment in its entirety defendants prosecute this appeal and urge a multiplicity of objections which are so numerous that we will be unable to consider them in detail, and will likewise be unable to discuss in detail the testimony bearing upon the various issues of fact, which we are called upon to review. We have therefore concluded in disposing of the appeal to content ourselves with stating only our conclusions, both of law and fact, since to do otherwise could not possibly serve any useful purpose to any one, but could only be of interest to the litigants themselves.

Before going to the merits it may be briefly stated that the executrix kept no account of her transactions as such. There was no appraisement of the estate nor was there any account kept of the public sale of the personal property of the decedent. Claims were paid indiscriminately, without the requisite statutory proof, and in many cases no entry of any kind was made of the payment of the claim; not even receipts from the claimants were demanded, except perhaps in a few instances.

At the beginning we are convinced that the court erred in failing to charge the widow, as executrix, with $700.00 as the proceeds of the sale of personal property, instead of only $400.00. The proof overwhelmingly shows that the total amount of the sale was as much as, if not more than, $1,000.00, $300.00 of which, according to the testimony, was property belonging to her and with which she should not be charged. Furthermore, we are convinced that nothing in the will relieves the bank stock and the insurance stock from being subjected to debts, if necessary for that purpose, and the proof in the record shows it to be necessary. However, it has no practical bearing upon the rights of the parties whether that

stock be sold or not, since it was bequeathed in the same manner as the real estate was devised.

Coming now to the objections to the allowances of claims, and beginning with class A, the record shows that A-1, amounting to $139.53 was a judgment against the deceased and it was properly allowed. A-2, amounting to $300.00, was the amount paid by plaintiff in discharge of an obligation signed by her husband as surety and guarantor for one George Homborg. It was executed to a firm from which the principal was buying supplies for the conducting of his business of digging or boring wells. Claims A-3 ($158.97), A-4 ($222.45) and A-5 ($119.82) were notes to banks upon which the decedent was surety. The receipted notes were filed as claims, but the guaranty obligation for $300.00 was not filed, nor is it shown whether the principals in any of those obligations were solvent or insolvent. However, the holders of them could have sued plaintiff as the personal representative of her husband and compelled her to pay them, if there were sufficient assets of the estate (which, including the farm, was true in this case) without proceeding against the principals. Under similar facts and circumstances this court has held that the personal representative who paid the claims without the requisite statutory proof from the claimant might receive credit therefor, since such statutory proof "was intended to furnish to the personal representative something to guide him in the settlement of claims against the decedent, and as to which he would, in the great majority of cases, have no knowledge." Terrell v. Rowland, 86 Ky. 67; Chorn v. Chorn, 98 Ky. 627, and Gilliam v. Gilliam, 146 Ky. 15. If the personal representative possesses knowledge of the validity and justness of the claim against his decedent and pays it without suit in order to save cost, we see no reason why he should not receive credit therefor in the absence of anything to show that the claim was illegal, unjust or wrongfully paid. There is no such showing in this case, and we think the claims now under consideration were properly allowed, although it will yet be the duty of plaintiff, or any successor, to make such efforts as the law requires to realize from the principals the whole, or as much of such debts as may be possible, and when done the amount realized will belong to and be distributed among the appellees; but she will not be required to incur cost and expense in such efforts, if the fact is that the principals are clear-

ly insolvent.   Claim A-6 ($51.00) is shown to be a note of the decedent to the Home Insurance Company and was properly allowed.   Claim C-1 ($45.00) was for painting the roof on the dwelling after the decedent's death. It is the duty of the life tenant to keep the property in repair and the amount represented by this claim was expended for this purpose and the claim should not be allowed.   Claim C-2 ($53.37) was for taxes assessed and due from the decedent before his death and was properly allowed, as was also claim C-3 ($54.85), which was the bill of the physician who attended decedent before his death.   Claim C-4 ($500.00) was allowed in the commissioner's report thus: ''To Mrs. Sarah E. Champion, an account for money spent for various incidentals.''   The affidavit of testatrix and that of her niece, as witness to this claim, is as indefinite as is the language of the commissioner.   No claim constituting any part of that sum is filed nor did any one to whom any part of it was paid ever make affidavit or testify in the case.   Manifestly there can be no law under which this claim could be allowed.

This brings us to the claims allowed the testatrix individually in classification B.   The first one is for $780.00 and represented the accumulated interest on $1,300.00, the amount for which testatrix sold her land in 1907, and which sum she says she delivered to her husband under an agreement that he would repay it.   The principal amount of $1,300.00 was paid by the husband a few days before his death.   A witness testified in the case that on the next day after the sale of plaintiff's farm in 1907 he borrowed from plaintiff $700.00 of the proceeds and executed a note to her for that amount; that he paid to her thereafter the interest annually and paid her the balance of the note ($350.00) after the death of her husband.   Under these circumstances we conclude that it was error to allow plaintiff interest under this claim on any sum more than $600.00.   Claim B-2 ($2,500.00) is for rent of plaintiff's farm from the date of the marriage until it was sold.   This claim is resisted: (1) Because it is said that before the passage of the married woman's act in 1894, commonly known as ''The Weisinger Act,'' the husband was entitled to collect and appropriate the rents from his wife's real estate and that under the doctrine of the case of Rose v. Rose, 104 Ky. 48, that act did not affect the husband's right in this regard as

to land owned and acquired by the wife during the marriage relation, and before the passage of that act. Furthermore, it is insisted (2), that the wife, under the provisions of section 606 of the Civil Code, was incompetent to testify as to this, and all other claims in class B.

Answering the first objection to the allowance of the claim now under consideration it may be stated that the law as stated by counsel with reference to the existence of the right of the husband, before the passage of the Weisinger act, to collect and appropriate the rents of the wife's land, and that this right continued after the passage of that act as to land acquired by her before then, is correct. It does not follow, however, that the claim should be disallowed for that purpose because it was held in the cases of Bohannon v. Bohannon, 29 Ky. L. R. 143; Owsley v. Owsley, 25 Ky. L. R. 1194, and Gilliam v. Gilliam, 146 Ky. 15, that a husband might waive his marital rights in and to the property of his wife, and also waive his interest in the rents and proceeds thereof, and to thereby convert himself into a trustee for her and hold such property, which would otherwise (under his marital rights) be his, for the use and benefit of his wife. Those cases furthermore say that if the evidence is sufficient to show such waiver on the part of the husband, his estate, after his death, may be made to account to the wife for the money or property so held by the husband as her trustee.

Concerning the second objection (that of the incompetency of the wife as a witness), it must also be admitted that the contention is correct in the abstract; but the incompetency of a witness to testify is a matter which may be waived and if waived the testimony of the witness, notwithstanding his incompetency, will be considered and weighed in the same manner and to the same extent as is that of any other competent, though interested, witness. In this case the questions propounded to the wife were each objected to before the notary public, who took the deposition, but the record nowhere shows that any objection to any of her testimony was made before the court at or prior to the trial, nor does it appear anywhere in the record that any objection was ever acted upon by the court. We have held in a number of cases that under such circumstances the incompetency of the witness will be considered as waived and his tes-

timony will be given such weight as the court trying the case sees proper to give it. Cases so holding are: Goodam v. Goodan, 184 Ky. 79; Robertson v. Robertson, 185 Ky. 503; Keeton v. Mahan, 177 Ky. 85; Fears v. United Loan and Deposit Bank, 172 Ky. 255; Hancock v. Chapman, 170 Ky. 99, and Skidmore v. Harriss, 157 Ky. 756. Besides the testimony of Mrs. Champion concerning the facts necessary to the establishment of the claim under consideration a disinterested witness, the son of the tenant who rented her farm for the first thirteen years for which the claim is made, corroborated her as to the husband receiving the rent and his agreement to account to her for it. Mrs. Champion, although an industrious woman, was shown to have but very little money or property at the time of her husband's death, and we are not inclined to disregard altogether her testimony when it stands uncontradicted in this record.

What has been said in disposing of claim B-2, applies with equal force to claims B-3 ($123.75), B-4 ($100.00), B-5 ($100.00), and B-6 ($159.98). The latter claim (B-6) was the amount received by Mrs. Champion as heir from the estate of a deceased uncle, and the others were for sums realized from the sale of small parcels of land and timber from her land. Claim B-7 ($1,250.00) is said to be the amount received by Mrs. Champion from the estate of her father, Mr. Dickson, upon a settlement of the latter's estate in Boone county, Kentucky, in the year 1895. The evidence concerning this claim is in a very nebulous condition. Plaintiff herself does not testify as to the amount of it, but says that her father's farm sold for $5,000.00 and that she was entitled to one-fourth thereof, but it is not shown whether a widow survived him and if so how much she received, and plaintiff states that she does not know the amount of her father's indebtedness. A brother-in-law of plaintiff was the representative of Mr. Dickson's estate, but neither his deposition was taken nor was that of his wife, a sister of plaintiff, nor were any records or copies thereof, from the Boone county court, or the Boone circuit court (in one or the other of which the settlement of Mr. Dickson's estate must appear), introduced or in any manner relied on. Moreover, a niece of plaintiff, who was introduced as a witness in her behalf and who is the daughter of the personal representative of plaintiff's father, testified that the entire estate of Mr. Dickson, which was divided among his four heirs, amounted only

to $1,250.00. We think that before the estate of a deceased person should be charged with a trust fund and made to account therefor, the facts necessary to create the trust must be established by evidence sufficiently explicit for the purpose. Planitiff could have easily shown by record or other proof the amount she received from the estate of her father. She did not see proper to adopt that course, but rested her claim upon testimony so vague and contradictory as to leave the merits of the claim in grave and serious doubt. Under such circumstances, we think a court of equity should deny the claim altogether and the trial court, under the facts presented, erred in adjudging the plaintiff to be entitled to this claim.

This disposes of all the questions in the case and the judgment is reversed to the extent indicated and affirmed in all other respects with directions to enter one in conformity with this opinion.