## Greenway's Adm'r et al. v. Greenway et al.

(Decided Nov. 10, 1936.)

ROSS & ROSS for appellants.

GRANT E. LILLY for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

This appeal involves the settlement of the estate of William Irvine Greenway, who died intestate in August, 1928, a citizen of Cook county, Illinois. For an understanding of the issues it might be helpful to state the nature and source of his estate.

Mrs. E. S. Irvine died testate in November, 1920, naming in her will John W. Crooke, appellant in this action, and D. I. White as executors. White did not qualify and Crooke alone qualified as executor. Mrs. Irvine left a large personal estate in cash, government bonds, and bank stocks. The settlement of her estate became involved in litigation (Greenway v. White, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385; White v. Greenway, 209 Ky. 368, 272 S. W. 920; Walker v. Irvine's Ex'r, 225 Ky. 699, 9 S. W. [2d] 1020, and Greenway v. Irvine, 235 Ky. 363, 31 S. W. [2d] 606) and was finally settled in 1931. It was finally determined that W. I. Greenway was the chief beneficiary of the per-

sonal estate and also the owner of the farm in Madison county, Kentucky.

Before the estate of Mrs. Irvine was settled, W. I. Greenway died on the date stated above, leaving the appellees herein, namely G. C. Greenway, James C. Greenway, Sarah Greenway Kellar, and Isabella Greenway, guardian for John S. Greenway, an infant, as his only heirs at law. The decedent, Greenway, left an estate in Illinois, and one Percival P. Coffin was appointed as his administrator in that state; and the same John W. Crooke, executor of the estate of Mrs. E. S. Irvine, was appointed administrator of Greenway's estate in this state. It appears that during the long period of litigation involving the settlement of Mrs. E. S. Irvine's estate, and up to the fall of 1930, more than two years after the death of Greenway, Crooke acted as farm agent or receiver in looking after and operating the farm in Madison county, which was finally adjudged to W. I. Greenway, and as such agent large sums of money came to his hands as rents and other income from the farm.

In February, 1931, the appellees, by their attorney, Grant E. Lilly, filed this action in the Madison circuit court against Crooke as executor of W. I. Greenway's estate for a settlement of the estate and asked that it be referred to the master commissioner to audit the accounts of Crooke as the administrator of Greenway's estate, including the Irvine estate which had been adjudged to Greenway, and for all things necessary and proper to a full settlement of the estate.

On the 29th day of October, 1931, the commissioner filed his report of settlement, but it appears that he did not separate the items so as to show the funds received from the estate of Mrs. Irvine and the funds received as rents of the farm up to the death of W. I. Greenway and the items coming into his hands since the death of Greenway. The Illinois administrator requested that his report separate the various items as indicated above, and the commissioner was permitted by the court to withdraw his report of settlement and itemize it showing the various funds coming to his hands from various sources. The commissioner thereupon reformed his report, and refiled it December 31, 1931, but there was no change in the results. No exceptions were filed to

the report, and on January 13, 1932, an order was entered confirming same. The report, as originally filed October 29, 1931, and refiled December 31, 1931, and confirmed January 13, 1932, showed that Crooke had received from the estate of Mrs. Irvine the sum of $28,554.56 and he had made disbursements in the sum of $17,315.55, leaving a balance of $11,239.01 in his hands on this item. The report also showed that Crooke had received rents and income from the farm up to the death of Greenway in the sum of $16,268.80 and had disbursed the sum of $12,131.82, leaving a balance of $4,136.98, on this item, and he had also received rents for the appellees after the death of Greenway the sum of $3,581.33 and had disbursed as expenses in operating the farm $4,617.06, leaving a deficit of $1,035.73, which deficit was credited on the balance of $4,136.98 received as rents before the death of Greenway, leaving a net balance of $3,101.25, on the farm item, plus the $11,239.01 from the Irvine estate, making a total of $14,340.26, and from this sum there should be deducted the costs of the administration of the estate.

Copies of the various reports of settlement were sent to the attorney for the Illinois administrator, and on May 3, 1933, the attorney for him wrote Mr. Lilly a letter acknowledging receipt of the report, and further advising that Mr. Coffin, the Illinois administrator, had died and suggested that since none of the heirs of Greenway lived in the state of Illinois, he deemed it unnecessary to have another administrator appointed in that state and that Mr. Crooke, the Kentucky administrator, settle directly with the heirs of Greenway. The record does not disclose the exact date of the death of the Illinois administrator, but it appears that he died some time previous to May 1933. On May 24, 1933, the appellees, plaintiffs below, filed an amended petition setting up the death of the Illinois administrator and asked that the money in the hands of Crooke be paid directly to them. On May 25, 1934, judgment was entered reciting that it appears that there was in the hands of Crooke the sum of $13,690.49, and he was ordered to pay this sum to the appellees. Later there was a supplemental petition filed challenging the correctness of the report of Crooke filed March 21, 1933, and asked that same be corrected, and the matter was again referred to the commissioner.

Various other amended and supplemental petitions, answers, exceptions to reports, and other steps were taken by the respective parties. But it would serve no useful purpose to incumber this opinion by referring to and discussing all the various steps taken, since the final results do not materially differ from the original settlements. The case was finally prepared and submitted for final judgment on exceptions to the commissioner's report, and on November 1, 1935, the court entered judgment adjudging that the true balance in the hands of Crooke, the administrator, as of the 27th day of October, 1931, was $12,701.22, and that he be charged with interest on that amount from that date to March 2, 1933, and that Crooke be allowed a commission of 1 per cent. on the funds distributed by him up to March 2, 1933, but refused to allow him commission on the sum of $4,136.98, which came to his hands as administrator from himself as the agent of plaintiffs in the operation of their farm, as he had been paid for those services in the settlement of his accounts with them as their farm agent. The court further found that after October 27, 1931, other funds had come to the hands of the administrator making a total of $18,823.28, and after deducting therefrom all proper credits there was a balance of $9,-289.17 in the hands of Crooke and it was adjudged that the appellees, plaintiffs below, recover of him that sum. Crooke appeals from that judgment personally and as administrator.

Various complaints and grounds are urged for reversal. It is insisted that the reports of settlements filed by the commisisoner previous to October 18, 1934, were not the reports of appellant but were prepared by Grant E. Lilly, who was acting as his attorney and also was attorney for the appellees. It appears that after the report of settlement had been confirmed October 18, 1934, appellant moved the court to set it aside, setting out therein various reasons, including the allegation that Mr. Lilly was his attorney and that he had relied upon him to look after his interest. Mr. Lilly did not object to the motion, and the court sustained it and set aside the order confirming the report and permitted appellant to file his answer. At this time appellant had employed the law firm of Ross & Ross as his counsel and he was represented by them on the resettlement of his account. It is conceded that appellant was appointed adminis-

trator on the motion of Mr. Lilly and that Mr. Lilly prepared the first settlements from the data and records furnished him by appellant, but it does not appear that at that time there was any controversy between the administrator and the heirs of the Greenway estate. It is also disclosed by the record that Mr. Lilly had represented the Greenway heirs in the settlement of the Irvine estate and the Greenway estate and these facts were known to appellant. If it be conceded that appellant suffered any injustice by the preparation of his settlement by Lilly, it was corrected by the resettlement when he was represented by Ross & Ross, attorneys of his own selection. The former settlements were all set aside and appellant was permitted to file his answer and the whole matter was tried de novo. The result of the final settlement was practically the same as that of the original and does not indicate that any fraud or wrong was perpetrated on appellant in the previous settlements. But in fairness to Mr. Lilly we deem it proper to say that the record does not disclose that he was guilty of any improper tactics or misconduct.

The next complaint is that appellant was improperly charged as administrator with the rents of the land accruing in the lifetime of Greenway. The rents with which he was charged having accrued in the lifetime of Greenway, same were personal property and assets in the hands of the administrator and a proper charge against him as such. Penn's Ex'r v. Penn's Ex'r, 120 Ky. 557, 87 S. W. 306, 27 Ky. Law Rep. 946; Anspacher v. Utterback's Adm'r et al., 252 Ky. 666, 68 S. W. (2d) 15. And the complaint is also made that appellant should have had credit for the farm deficit in the sum of $1,035.73, but an examination of the settlement shows that he received credit for this item. He reported a farm balance of $4,136.78, but this item was ultimately credited with the farm deficit leaving a balance of $3,101.25 on the farm item.

It is next insisted that the court should have allowed appellant more than 1 per cent. commission on the sums distributed by him because the delay in the settlement of the estate or the distribution of the funds coming to his hands as administrator was caused by Mr. Lilly, attorney for appellees. We do not think the record supports this contention. It appears that soon after the settlement was made in October, 1931, which was

some time before the death of the Illinois administrator, there was a large sum of money in the hands of appellant, and he was ordered to pay the same to the Illinois administrator but failed to do so, and there is no reason shown for his delay. It may be true that he was not urged or persistently pursued in making the payment, but it does not appear that there was any agreement on the part of Mr. Lilly or other interested parties that he hold the funds or otherwise defer payment thereof to the Illinois administrator, as directed by the court. We do not think that any conduct or action on the part of Mr. Lilly delayed the settlement of the estate. It is the rule that when an administrator delays or neglects the settlement of an estate or the payment or distribution of funds in his hands when same become payable, or otherwise neglects his duty, the courts may disallow any compensation or commission, or allow a less compensation than would or should have been allowed if the administrator had properly discharged his duties. Kentucky Statutes, sec. 3883; Anspacher v. Utterback's Adm'r et al., supra; Comingor v. Louisville Trust Co., 128 Ky. 697, 108 S. W. 950, 111 S. W. 681, 33 Ky. Law Rep. 53, 884, 129 Am. St. Rep. 322; and authorities cited therein.

Under the facts disclosed by this record we do not think the court abused a sound discretion in allowing appellant only one per cent. commission.

Appellant also insists that he was entitled to be credited with the sum of $1,981.86, as costs of a barn built by him on the farm as appellees' farm agent. But we find from the report of settlement that he did receive credit for this item. It also appears that appellant had deposited in the Citizens National Bank of Richmond, Ky., all the funds coming to his hands as executor of the estate of Mrs. E. S. Irvine, and as administrator of the estate of Greenway, and in the spring of 1933, the bank became insolvent and went into liquidation, and as a result of the failure of the bank, appellant lost $4,-107.22 and the court charged him with this loss. He pleaded the bank failure in his answer alleging that at the time he made the deposits in the bank it was open and actively engaged in the banking business and regarded by prudent business men as a safe and sound institution, and that the failure of the bank was caused by the economic depression and the loss sustained by rea-

son of the failure of the bank was not caused by any neglect on his part. But he did not allege that he thought the bank was solvent and safe. The court sustained a demurrer to the answer with leave to amend, but no amendment was filed. We think appellant should have alleged what he thought about the soundness or safety of the bank as well as what the people of the community generally thought about it. Even though other people of the community may have thought the bank was safe, it was important that appellant also thought it was safe. So far as his pleading shows he may have had some information or reason to believe the bank to be unsafe notwithstanding other people may have thought it was safe. A demurrer having been sustained to the pleading, no answer was filed thereto showing what connection, if any, appellant had with the bank; but it is stated in brief of appellee, and not denied by reply brief or otherwise, that appellant was and had been many years previous, the cashier of the bank. And it is probable that the court was possessed of this knowledge. But we presume that the court sustained · the demurrer because appellant failed to allege what he thought about the safety of the bank and not upon its personal knowledge of appellant having been cashier of the bank, and we think the former reason was a sufficient one to sustain the demurrer.

Lastly, it is insisted that the court improperly charged appellant with interest on certain items, but it appears that he was charged with interest on these items from the time they were distributable and should have been distributed by him. It appears that there was an order entered in October, 1931, ordering appellant to pay to the Illinois administrator the sum of approximately $15,000, and the court charged him with interest from the date of that order and also charged him with interest on other certain sums from the time they were distributable. In Bemiss v. Widows' etc., Home, 191 Ky. 316, 230 S. W. 310, it is held that an administrator is liable for interest from the time he ought to have made settlement though two years had not elapsed. The general rule is that an administrator is chargeable with interest only after two years from the time he receives the funds, but this rule is applicable to circumstances where the settlement was not due, or other cause shown why the funds are not payable. But this does not mean

that an administrator may withhold payment or distribution of funds in his hands for two years or other unreasonable time, without legal cause, and interest should be charged from the time payable the same as other due obligations. We do not think the court improperly charged appellant with any interest.

We think the appellant had a fair settlement, and, finding no error, the judgment is affirmed.