# Dane et al. v. Welborn et al.

May 1, 1942.

520

J. H. Thomas for appellant G. L. Dane.

E. B. Anderson for appellant Fidelity & Casualty Co. of N. Y.

L. P. Tanner for appellee L. Wiley Welborn.

Claude E. Smith for other appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing in part and affirming in part.

The transcript of this record as made by the clerk of the trial court contains 539 pages. Subdivision 2 of Rule III of this Court, which has long been promulgated and published in each of the successive dockets of this Court, says in part: "If the transcript comprises more than 150 pages, it must be divided in two or more volumes so that no one volume comprises more than 150 pages. They must be securely bound at the top." The purpose of that rule is to facilitate the handling of it by this Court in familiarizing its members with the facts so as to properly determine the questions involved. The nonobservance of it renders the record cumbersome and heavy and far less easy to handle in reading the transcript of what occurred in the trial court, as well as the evidence introduced. The transcript as made out and filed in this court is in plain violation of that rule. The clerk charged the appellants, as certified by him, for making the record $165.30, and as a penalty for violating the rule by the clerk, that amount is now reduced to $150, and the clerk is directed to pay the reduction of $15.30 to the appellants in settlement of the imposed penalty against him.

The case is one filed by appellee and plaintiff below, in conjunction with the Commonwealth of Kentucky, against G. L. Dane, executor of the last will and testament of H. Welborn, deceased, and his surety as such, the Fidelity and Casualty Company of New York, and also against some grandchildren of the deceased testator, H. Welborn, in which the individual plaintiff sought judgment against the executor and his surety for $10,000, because of alleged defalcations in the discharge of his trust. However, plaintiff sought, in case it should be held that he was not entitled to the lump sum judgment prayed for, the surcharging of the settlements made by the executor with the McLean county court, and for judgment against him and his surety for the amount found to be due the estate of testator because of the same defalcations.

The alleged defalcations were set out in the petition and were divided into 15 attacks made on the first settlement of the executor which he filed with the McLean county court on April 11, 1927. His second and final one was filed on July 29, 1930, when on his request he resigned as such representative, and an executor de bonis non was appointed and qualified after the filing of this action. The testator died February 4, 1925. He was then and had been for some time, engaged in a small retail mercantile business in the village of Rumsey in McLean county where he resided. He also appears to have been engaged, in a small way, in other enterprises, and for years prior to his death his mercantile business was mainly and chiefly operated and supervised by one J. E. Whobrey, testator's brother-in-law, who in the operation of the store was assisted by a bookkeeper and other necessary clerical hire. Whobrey, after being vested with such authority practically ran the mercantile business himself, exercising the authority of owner in that respect. He, therefore, bought goods from wholesalers, paid the bills, extended credit to customers and did all of the things relating to such business that an absolute owner could or would do. The terms upon which Whobrey was employed were alternative, and vested him with a choice, which he had not made at the time of the testator's death. That choice was, that he might accept a half interest in the mercantile business as his compensation for his services in operating it, or if he did not choose to become half owner he should be compensated at the rate of $60 per month as long as he continued to serve.

In addition to the attacks made in the petition on the first settlement of the executor there were also attacks made on his last and final one, all of which attacks upon both settlements were specifically denied by the executor and his surety in their separate answers to the petition. None of the grandchildren of the testator—though made parties defendants to the original petition—filed answers or otherwise appeared in the case until after the judgment was rendered. They, therefore, made no defense in the trial court.

The will of the testator devised to his son—plaintiff and appellee L. Wiley Welborn—certain articles of his household goods and then gave to each of his four grandchildren, whose parents were dead, $1,000, and directed that the balance of his personal property be paid to his son, L. Wiley Welborn, who at the time of testator's death, was 15 years of age, having been born in 1910. His mother died in 1914, when he was only four years of age and before her death she expressed the desire that her son and only child (she being the second wife of testator) should be taken into the home and reared by her brother, the executor of her husband's will. That request was carried out and when testator's will was probated shortly after his death, the uncle not only qualified as the executor thereof, but he was likewise appointed and qualified as guardian for his nephew, H. Wiley Welborn. The necessities of the ward thereafter—including board, clothing, schooling, and other expenses—were supplied by the guardian and executor with the exception of occasions that the ward would spend with his father at the latter's residence or boarding house where he sometimes lived. However, the only expense which those visits relieved the guardian from paying, if any, was the amount of actual board during the periods of those visits, all other expenses being met by him, as we gather from the record.

The case was referred to a special commissioner to take proof and report on the issues made by the pleadings and he filed his first report on November 22, 1937, to which both parties filed exceptions, but without passing upon them the court re-referred the case to the commissioner, because defendants for some reason, had not taken their proof and filed it with him before he made that report. In the re-reference of the case, defendants were expressly given the right to take their proof, which

they later did, and the commissioner filed his second report on March 20, 1939, in which he substantially disallowed most of the grounds of attack of the executor's settlements with the county court, but he charged the executor with the amount of a deposit of $700 in the Bank of Calhoun to the credit of the testator at the time of his death, and an item of $1,034.95, the amount of a deposit account in the same bank to the credit of the executor and which was made by him after his appointment as such, each of which deposits were lost to the estate on a later failure of the bank, except dividends received. The commissioner also disallowed as credits an item of $158.43 as an excess charge contained in the executor's first settlement with the county court and also disallowed commissions on the above disallowed items amounting to $169.56. The executor had taken credit by a charge of $1,500 for boarding, clothing, maintaining, and nursing plaintiff H. Wiley Welborn, for ten years undertaken by him through the request of his sister, Mrs. Welborn, at the time of or before her death, with the knowledge and acquiescence of testator whose legal duty it was to bear such burdens for his infant child.

The aggregate amount of such disallowed credits was $3,562.94, for which the commissioner in his last report recommended judgment against defendants and appellants, with interest from February 15, 1935, the date of the filing of the action—and to which date for the beginning of interest no exceptions were filed. Defendants filed exceptions to the commissioner's final report (which he said was a substitute for and not supplemental to his first one, and to which attorneys appear to agree) in charging the executor with the five items disallowed by him, last referred to, and plaintiff filed exceptions (a) calling in question the report of the commissioner in failing to charge the executor with the amount of alleged rental of a store building which it was alleged he had collected and not accounted for; (b) in giving credit to the executor for $978.24 paid by him to J. E. Whobrey as balance on salary due him from testator before his death, and for services rendered by him between the death of the testator and the sale of the stock of merchandise by the executor; (c) because the commissioner erred in giving the executor credit for the amount of a number of accounts against the testator that the administrator had paid, upon the ground that when paid they were not

proven as the statute requires in such cases; (d) because the commissioner wrongfully allowed credit to the executor in the amount of $595.70 paid to the Bank of Calhoun and evidenced by notes to that bank; (e) because the commissioner erred in charging the executor with only the amount of $12,221.55 as having been received by him under the appraisement made at the time of his appointment and qualification as executor, instead of charging him with $16,039 as the alleged proper amount of property going into his hands for administration.

The court heard the exceptions filed by both parties, and sustained defendant's exceptions and allowed credit to the executor for each of the last items, supra, which the special commissioner had disallowed, except the claim for $1,500 for boarding, nursing and maintaining the infant plaintiff, as hereinbefore set out. The court disallowed that item, with, perhaps, some slight corrections in interest credits, and rendered judgment in favor of plaintiff against defendants for the sum of $1,335.48, with interest from April 11, 1927 (although the petition did not ask for interest from that date, nor did the commissioner allow it, but allowed interest only from the date of the filing of the action), and from that judgment defendants prosecute this appeal and plaintiffs have moved for and obtained a cross-appeal in this Court.

Practically all of the actions and doings of the executor in making collections of notes and accounts due his decedent, as well as payments of accounts due from the latter to others were attacked by the petition. It also attacked the appraisement of the appointed appraisers of decedent's personal property, because it did not set out each item thereof, but only grouped the particular classes of property appraised and fixed a value thereon. They thus listed the face value of accounts due the estate in the aggregate, and then reported their estimate of the value thereof, and the same course was pursued in appraising notes that had been executed to the executor—all of which indebtedness was due from customers patronizing decedent's mercantile business. Many of the accounts were barred by limitation and by far the greater number of them were owed by persons wholly insolvent. We do not recall in reading this large record —which we have critically examined more than once—of any accounts or notes due to decedent's estate which were not included in the general lists made by the ap-

praisers and we do not recall any proof of any asset that was omitted from the appraisement. Therefore, if it should be conceded that the appraisement should have itemized such indebtedness we fail to see where the estate lost anything by the general language in which the appraisement was framed.

In the payment of claims due from the estate to others, there were a number of them that the executor paid without the prima facie proof of the claims required by Section 3870 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. But, the record as we interpret it, nowhere discloses by any evidence that any of the claims so paid were false, fictitious, or not owed by decedent, with the possible exception of those hereinafter to be considered. The various claims attacked for one cause or another, range from $2.24 to the $1,500 item hereinbefore mentioned, and to undertake to determine each of them would swell this opinion to the size of an unabridged dictionary. The same might be said by other collateral contentions made in support of the various attacks made upon the executor's settlements with the county court concerning his actions and doings, as well as non-actions as such fiduciary.

In such circumstances the remarks made by us in the case of Tolly v. Champion, 191 Ky. 114, 229 S. W. 90, 91, are pertinent. That litigation was of the same character and type as the instant one and wherein the questions discussed were of the same multifarious nature as this record presents. We therein said: "Complaining of the judgment in its entirety, defendants prosecute this appeal and urge a multiplicity of objections, which are so numerous that we will be unable to consider them in detail, and will likewise be unable to discuss in detail the testimony bearing upon the various issues of fact, which we are called upon to review. We have therefore concluded, in disposing of the appeal, to content ourselves with stating only our conclusions, both of law and fact, since to do otherwise could not possibly serve any useful purpose to any one, but could only be of interest to the litigants themselves." In this case it appears that the claims paid by the executor as due from his decedent—though some of them were paid without the statutory affidavit, as we have pointed out—were in fact owed by decedent and their justness was not attacked, except as to those hereinafter considered. However such claim-

ants did later verify their claims before the executor made his settlement, and which clearly cured the defects complained of and rendered them of no materiality in the case. We repeat, we have examined the entire record including, of course, the testimony, and we have concluded that the only issues necessary to be considered relate to the claims to which the exceptions of the parties were chiefly directed, which they filed to the commissioner's second report, and to a consideration of them we will now direct our attention.

The items that the commissioner in his second report disallowed as a credit to the executor—consisting of the two bank deposits which with the exception of dividends paid thereon were lost by a failure of the bank, and aggregating $1,734.95—were, as we have seen, allowed as credits to him by the court. It was proven that up to the time of the failure of the bank in which those deposits were made it bore the reputation in the community of a solvent institution, its solvency not being questioned, nor were there any contrary rumors of such that would be calculated to put one on inquiry. The executor testified that he acted in the best of faith with reference to making one of those deposits and also with reference to each of them remaining in the bank until its failure, and which we conclude was the exercise of ordinary care, which is all that the law requires in such cases with reference to fiduciaries. See Eaker v. Husbands, 263 Ky. 283, 92 S. W. (2d) 43; Greenway's Adm'r v. Greenway, 266 Ky. 114, 98 S. W. (2d) 283; 21 Amer. Jur. 533, Section 277. We therefore conclude that the court properly allowed each of such credits.

The proof also shows that the executor was properly allowed the item of $158.43 as an overpayment, but which the commissioner disallowed, and, since the rejected claims by him were properly allowable he should not have charged the executor with the item of $169.56 made up of commissions on the executor's disallowed claims. Therefore, the court properly allowed that item as a credit to the executor, and which leaves only the item of $1,500 involved in the exceptions of appellants. As we have seen, it consists of a charge of $150 annually for board, maintenance, nursing, etc., of plaintiff, the infant heir of testator, and which services were rendered by the executor for a period of ten years. This item is attacked mainly because of the alleged failure to prove

an express contract whereby such charges might be made against testator for the services rendered to his infant child. However, this court, in the case of Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459, considered the objection raised to this claim in all of its aspects. The opinion recognizes that such a claim will ordinarily be disallowed, unless based upon some contract. But in discussing the various cases of this and other courts, the conclusion was reached that a contract might be inferred from the circumstances surrounding the case and become enforceable in that event the same as if an express contract was proven. Because of the already considerable length of this opinion we refer the reader to the Kellum case without further comment on it.

We, therefore, conclude that the court, as well as the commissioner, were each in error in disallowing that claim. When allowed in favor of appellants it exceeds the amount of the judgment rendered against appellants, by the sum of $164.52. But no claim for such excess is made by defendants; however, that item would perhaps cover the board of the plaintiff at the periods when he was away from the home of the executor on visits to his father, thereby equalizing the rights of the parties on that score.

Turning now to the exceptions of plaintiff to the commissioner's report we first consider the item of $675 rent for the storehouse, and we find that the proof showed that all such collections of rent were paid to the devisees as directed in testator's will as and when they were made, or thereafter, and for which reason that item was properly disallowed as a charge against the executor. The next item to which plaintiff's exceptions were directed was $978.24 paid to J. E. Whobrey as salary for services rendered to decedent, plus some services rendered between that date and when the stock of merchandise was sold by the executor. As we have hereinbefore stated, Whobrey was serving in his capacity, as hereinbefore described under an agreement extending to him alternative compensation, i. e., whether he would become a partner in the business as a half owner in the stock, or accept $60 a month during the time he so served. The executor consulted his attorneys of high standing in his county seat and laid before them the facts with reference to Whobrey's claim. He had stated to the executor that he would accept the balance due him, at $60 per month,

instead of claiming a half interest in the stock of merchandise, and they advised him to pay the balance of $60 a month to the claimant, rather than to allow him to take a half of the value of the stock of merchandise, and which resulted in a saving to the estate, since the stock of merchandise was worth something in the neighborhood of and was sold for $2,600 plus. In the circumstances we fail to see any just grounds for disallowing that claim and the court therefore properly allowed it.

The next two exceptions by plaintiff related to the payment of unproven claims as required by Section 3870 of our Statutes, supra, and which we have hereinbefore disposed of. The last exception of plaintiff relates to a matter—also hereinbefore disposed of—i. e., the failure to charge the executor in the appraisement with something over $4,000 of notes and accounts, which plaintiff insisted was omitted therefrom. We would have been pleased, if space would have permitted, to have discussed the questions involved in more detail; but, for the reasons hereinbefore set out, we conclude our failure in that respect is justified.

For the reasons stated the judgment is reversed on the appeal, and is affirmed on all cross-appeals, with directions to enter a judgment dismissing the petition.