## Blackburn et al. v. Smith.

Decided November 14, 1930.)

G. R. BLACKBURN and L. J. MAY for appellants

E. J. PICKLESIMER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On the 16th day of November, 1915, Floyd Blackburn by a voluntary conveyance deeded to his wife a tract of land in Pike county, Ky., part of a larger tract which he had obtained from his father. The deed was recorded on December 1, 1921. During her lifetime, Mrs. Blackburn sold off from time to time parts of this land deeded to her by her husband. Mrs. Blackburn died intestate on the 16th day of November, 1923, leaving surviving her as her only heirs at law the present appellants, who are her children and all of whom were then minors. By 1926, however, the appellants, Berl Blackburn, Carson Blackburn, Clemmie Blackburn, and Virgil Blackburn, had come of age. On the 13th day of July, 1925, Floyd Blackburn, then a widower, deeded to the appellee Smith what he yet had left of the tract of land which he had obtained from his father. The deed undertook to expressly except by description the land which he had sold off from this larger tract. It turned out, however, that this deed to the appellee Smith overlapped to the extent of about half an acre that portion of the land which Floyd Blackburn had conveyed to his wife in 1916 and which had descended to her children. In ignorance of this fact, Smith entered upon the overlap and erected some valuable improvements thereon. At that time the appellant Berl Blackburn was absent from this country on service in the United States Navy. On his return he brought this suit against Smith to recover the overlap, making his sisters and brothers parties defendant. These sisters and

brothers came in and by answer and cross-petition sought like relief against Smith. Smith defended on the ground that he was a bona fide purchaser of the overlap without actual notice of the voluntary conveyance of 1916. He also asked that, in the event judgment should go against him, he be reimbursed for the improvements he had put upon the ground. By a reply, the Blackburn heirs denied that Smith was a bona fide purchaser without actual notice of the voluntary conveyance, and pleaded the ten-year statute of limitations against fraud or mistake. Other pleadings completed the issues on these questions. After evidence had been introduced, the case was submitted and the chancellor dismissed the petition and cross-petition of the Blackburn heirs, and they have appealed.

We will first address ourselves to the defense interposed by Smith that he was a bona fide purchaser of the overlap without actual notice of the voluntary conveyance of 1916.

In the case of Enders v. Williams, 1 Metc. 346, in applying the law as it then stood with regard to the rights of a subsequent purchaser for value without actual notice of a prior voluntary conveyance, we said:

> "The construction of the statute of 27th Elizabeth has been more favorable to subsequent purchasers than that given to the 13th Elizabeth as to creditors. As purchasers do not trust to the personal responsibility of the vendor as creditors do to the personal responsibility of the debtor, but advance their money upon a conveyance of a specific article of property, and upon the faith of acquiring a good and valid title to it, they are regarded as having a higher equity than general creditors. (Salmon v. Bennett, 1 Conn. 525-528 [7 Am. Dec. 237]).
>
> "The doctrine in England is, that a voluntary conveyance is in law fraudulent and void against a subsequent purchaser for a valuable consideration, even with notice. (Doe v. James, 16 East, 212, 213; Buckle v. Mitchell, 18 Vesey, 111.)
>
> "The American courts have not, however, carried the doctrine to the same extent, or dealt so rigorously with conveyances merely voluntary. It has been held in several of the states, that a voluntary conveyance is only presumptively fraudulent

against a subsequent purchaser for a valuable consideration, without notice; that is, that a subsequent sale to a bona fide purchaser, without notice, is evidence that a prior voluntary conveyance was fraudulent. (Hudnal v. Wilder, 4 McCord (S. C.) 295 (17 Am. Dec. 744); Bank of Alexandria v. Patton, 1 Rob. (Va.) 500,)

"The same doctrine was held by the supreme court of the United States in the case of Cathcart et al. v. Robinson, (5 Pet. 265, 281 [8 L. Ed. 120].)

. . .

"The tendency of the modern decisions in this, as well as in the courts of most of the other states, has been to leave the question of fraud open to investigation to be determined by all the facts which tend to show the actual intention with which the conveyance was executed. The doctrine of constructive fraud has not been very favorably received, and has been strictly confined to that class of cases to which it had been previously authoritatively extended.

"Such, also, is the tendency of modern legislation on the subject; and with regard to voluntary conveyances, it is enacted by the Revised Statutes, (page 363) that they shall not, on that account alone, be void as to purchasers with notice. Whether they are to be deemed void where the purchase is made without notice, the statute does not declare. This case has, however, to be decided on the law as it existed at the time the voluntary conveyance and subsequent purchase were made, without regard to the provisions of the Revised Statutes.

"According to our exposition of that law, a voluntary conveyance should be deemed valid, against a subsequent purchaser with knowledge of its existence: that is, such a conveyance should not, merely because it is voluntary, be regarded as fraudulent and void as to a subsequent purchaser with actual notice. . . .

"If, however, the conveyance be not only voluntary, but actually fraudulent, then a subsequent purchaser has a right to disregard it. altogether, and will not be affected by notice. . . .

"A voluntary conveyance should, however, be deemed presumptively fraudulent against a subsequent purchaser for a valuable consideration, without actual notice. It should not, in our opinion,

be deemed absolutely void; but the question of fraud should be left open for investigation. The subsequent sale, however, raises a strong presumption of fraud in the gift, and imposes the burthen of proving that it was made bona fide on the person who claims under the voluntary conveyance.

''Constructive notice, arising from the recording of the conveyance, is not sufficient to affect the conscience of the purchaser. Actual knowledge is necessary for this purpose. He must be apprised of the existence of the gift, otherwise he cannot be said to combine with his vendor to avoid it. He may be as much deceived and cheated by the sale to him, where the voluntary conveyance is recorded, as where it is not recorded. There may be constructive notice where there is no actual notice. The only reason why a voluntary conveyance is not deemed fraudulent as to a purchaser with notice is, because, having knowledge of its existence, he is himself not regarded as a bona fide purchaser. But that reason ceases where he is ignorant of its existence, and does not apply where he has constructive notice only. . . . The law does not, however, so far favor the donee, as to exact from the purchaser the exercise of any diligence to ascertain the condition of the title. Consequently he is not affected by the constructive notice.''

At the time this Enders case was decided by this court, section 2 of chapter 40 of the Revised Statutes, which later became section 2 of article 1 of chapter 44 of the General Statutes, now being section 1907 of Carroll's Statutes, 1930 Edition, had been passed, but, as the transactions out of which the Enders case arose had taken place prior to its passage, this statute was held to have no application to that controversy.

In the case of Winter v. Mannen, 81 Ky. 123, there was a voluntary conveyance to a number of donees, some of whom reconveyed to the donor. He later conveyed the property to a purchaser for value. This purchaser having died his heirs conveyed the land to Mannen. The donees who had not reconveyed to their donor then brought this suit against Mannen to recover their share of the property which had been conveyed to them. It was held that, as their petition failed to aver that the subsequent purchaser bought with actual notice of the

voluntary conveyance, it was, as to her, fraudulent and void under the provisions of section 2, article 1, of chapter 44 of the General Statutes, now section 1907 of Carroll's Statutes, 1930 Edition, which reads:

"Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing liabilities, but shall not, on that account alone, be void as to creditors whose debts or demands are thereafter contracted, nor as to purchasers with notice of the voluntary alienation or charge; and though it be adjudged to be void as to a prior creditor, it shall not therefore be deemed to be void as to such subsequent creditors or purchasers."

There is not much discussion of the statute in this opinion beyond this short excerpt:

"The very language of the statute implies the converse of its expressed meaning, that a purchase made with actual notice of a voluntary alienation is void, which, of course, is subject to the condition that the voluntary alienation is not in addition actually fraudulent, for then a purchaser for value with actual notice would be protected."

However, in the case of Brown v. Connell, 85 Ky. 403, 3 S. W. 794, 795, 9 Ky. Law Rep. 27, the statute received a more elaborate analysis and construction. In that case, J. J. Connell in 1864 voluntarily conveyed a tract of land to his wife and children. The deed was at once recorded. In 1875, he, his wife, and all his children, save one, who was then yet a minor, conveyed the land to Brown who paid a valuable consideration for it. The child who had not joined in the conveyance on coming of age brought suit to recover his portion of the tract of land involved. Brown, relying on the provisions of section 2, article 1, of chapter 44 of the General Statutes, pleaded that he was a purchaser for value without actual notice of the voluntary conveyance. In construing the statute relied upon, we said:

"Section 1 of article 1, c. 44, of the General Statutes, provides, in substance, that every gift or conveyance of any real estate, made with the intent to delay, hinder, or defraud creditors, purchasers,

or other persons shall be void as against such creditors, purchasers, and other persons.

"The second section of the same article provides, in substance, that every gift or conveyance by a debtor of any of his estate, without a valuable consideration therefor, shall be void as to all of his then existing creditors, but shall not, on that account alone, be void as to creditors whose debts are thereafter created, nor as to purchasers with notice of the voluntary alienation.

"Under the first section of the statute supra, the rule is that, if the conveyance is actually fraudulent, the subsequent purchaser for value is not affected by either constructive or actual notice of the conveyance. Under the second section, the rule is that a voluntary conveyance is prima facie fraudulent as to a subsequent purchaser, and unless he has actual notice of the conveyance, his title is perfect; and he is not affected by the fact that the voluntary conveyance is of record. Actual, and not constructive, notice must be brought home to him."

After thus analyzing and construing the statute, we went on to say that, under the statute of limitations against relief for fraud or mistake, any right of action to set aside a voluntary conveyance actually or constructively fraudulent under section 2, article 1, chapter 44 of the General Statutes, must be brought within ten years from the time of the making of such a conveyance. We said:

"But the protection afforded to purchasers for value by these sections of the statute is only for a limited period. By section 6 of article 3, c. 71, it is provided that, 'in actions for relief for fraud or mistake . . . the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after making the contract or the perpetration of the fraud.'

"This section of the statute bars any right of action to set aside any gift or conveyance denounced by section 1, art. 1, c. 44, as actually fraudulent, or by section 2 of the same article, as constructively fraudulent after the lapse of 10 years from the time of making such conveyance. Such gift or conveyance when executed is valid as against all persons.

except those whose rights are saved by said sections. The subsequent purchaser for value under the first section may disregard the fraudulent conveyance in toto; under the second section, the subsequent purchaser is also protected, unless he has actual notice of the voluntary conveyance. But the saving of the rights of the protected class does not last longer than 10 years. If the fraudulent or voluntary conveyance is permitted to stand for 10 years without any action on the part of the protected class, then, as against that class, the donee or vendee under the voluntary or fraudulent conveyance acquires a perfect title. See Dorsey, etc., v. Phillips, etc., 84 Ky. 420, 1 S. W. 667, 8 Ky. Law Rep. 405."

As the conveyance to Brown had been made more than ten years after the voluntary conveyance to Connell's wife and children, we held that the defense relied upon by Brown, based on section 2, article 1, of chapter 44 of the General Statutes, was without avail as to him.

In Sewell v. Nelson, 113 Ky. 171, 67 S. W. 985, 987, 23 Ky. Law Rep. 2438, the question of how far a subsequent purchaser for value without actual notice of a prior voluntary conveyance will prevail over the donee under such a conveyance was again before us, and we there said:

"We do not find it necessary to pass upon the question of actual fraud charged by appellee against appellant and his vendee, G. B. W. Sewell. It seems to us to be clearly settled as the law of this state that where the senior conveyance, even though recorded, was voluntary, or not based upon that adequate consideration that makes its vendee a purchaser for value, within the contemplation of law, the subsequent purchaser for actual and sufficient value is not required to take constructive notice of the first conveyance, but, as against it, his equity and legal title will prevail."

It will be noted that we declined in this case to go into the question as to whether there was actual fraud in the voluntary conveyance involved. We laid it down as a rule of law that, if the subsequent purchaser took without actual notice of the prior voluntary conveyance, his title prevailed. In this same case, the ten-year statute of limitations was relied upon as a bar to the subse-

quent purchaser's defense under section 1907 of the Statutes. It developed, however, that the donees of the voluntary conveyance had never been in possession of the land, and so it was held that, although more than ten years had elapsed from the time the voluntary conveyance had been made, the donees, not having had possession of the land during that period, could not rely upon the statute of limitations invoked. We said:

"The other legal question presented by this appeal is whether appellant is protected by the Statutes of limitation. Appellee was in possession at the time of the bringing of this suit, and had been for five or six years before. Appellant had never been in possession of the land. Appellee brought the suit to quiet his title against appellant's claim, appellee asserting title for himself. Appellant set up his claim under the deed from G. B. W. Sewell. Appellee, replying, sought to avoid the effect of this deed by showing that it was fraudulent and voluntary. Appellant pleaded that this deed had been made in 1884, and that, as more than 10 years had elapsed from that time before the filing of the suit, the statutes of limitation against relief, when based upon fraud or mistake, interposed to perfect his title. The argument is a novel one. It is that one out of possession, under a fraudulent and void conveyance it may be, can have such conveyance ripened by time into a perfect one; that it may sustain an action of ejectment against one originally having the better title and in possession. The position is fallacious. The statutes of limitation do not apply (as respects property) to any one not in possession. The plea is a defense toward maintaining the status quo. A mere claim, for whatever time, unaccompanied by actual possession, can give no right under the statute."

In Scott v. Scott, 172 Ky. 658, 190 S. W. 143, 144, the rights of a subsequent purchaser for value without actual notice of a prior voluntary conveyance were involved. We again said:

"Under our statutes, a conveyance which is actually fraudulent as to the grantor's creditors is void as to subsequent purchasers for value from the grantor, such purchasers not being affected by either

actual or constructive notice of the conveyance, and a conveyance which is merely voluntary, and therefore only constructively fraudulent, is void as to such purchasers, unless they have actual notice of the conveyance, constructive notice not being sufficient to affect them.''

However, the situation presented was very like that in the Brown v. Connell case, supra, and so the statute of limitations against relief from fraud or mistake was applied.

Again in Elmore v. Overstreet, 219 Ky. 813, 294 S. W. 475, 476, was the general question we have been discussing presented, and again did we say:

''Under section 1906, Kentucky Statutes, a conveyance which is actually fraudulent as to the grantor's creditors is void as to subsequent purchasers for value from the grantor, such purchasers not being affected by either actual or constructive notice of the conveyance; and, under section 1907, Kentucky Statutes, a conveyance which is merely voluntary, and therefore only constructively fraudulent, is void as to such purchasers, unless they have actual notice of the conveyance, constructive notice not being sufficient to affect them.''

Thus we see that the rule is now well settled in this state that, under the provisions of section 1907 of the Statute, a subsequent purchaser for value without actual notice of a prior voluntary conveyance prevails over the donee under such a conveyance, and, for the latter to prevail, actual and not constructive notice must be brought home to the subsequent purchaser.

The authorities relied upon by the appellants, illustrative of which are Stewart v. Wheeler, 220 Ky. 687, 295 S. W. 991, and Perry v. Krish, 157 Ky. 109, 162 S. W. 555, are not out of harmony with this rule. In these cases, section 1906 and not section 1907 of the Statutes was involved.

From what we have said, it follows that appellee, Smith, was not affected by the constructive notice arising out of the recording of the 1916 deed in 1921, and that, unless he had actual notice of this 1916 deed or his rights are barred by the statute of limitations against relief from fraud or mistake, his title must prevail over that of the appellants.

As to the actual notice, there is proof to the effect that Floyd Blackburn told Smith that he had deeded some of the land he had obtained from his father to his wife, but Smith says that Blackburn told him that this land so conveyed to Mrs. Blackburn was on the other side of the hill from where the land which Blackburn proposed to convey to him lay. Blackburn denies this. It is admitted that Smith sent his father-in-law along with Blackburn to the county seat to get a description of the lands to be excepted from the conveyance which Blackburn proposed to make to Smith. They got a lawyer to look this matter up for them, and it was thought that the description in the deed prepared for Blackburn to sign and conveying to Smith the land Blackburn proposed to sell him, being all the land he had left, excepted all prior conveyances. The deed to Mrs. Blackburn was not discovered in the records, and so her lands, so far as the overlap is concerned, were not excepted. Smith says that Blackburn pointed out the boundaries of the land he proposed to convey to him, and that they included this overlap. Blackburn denies this. There were no improvements on the overlap, and it was contiguous to the land Blackburn still owned as well as contiguous to the land descended to the appellants. There were no open or visible signs of possession by the appellants of the overlap, and indeed nothing was said about it until the original plaintiff in this suit got back from the Navy, although some of the appellants, though perhaps still minors, were yet grown, were living in the neighborhood, and were very nearly of age when the conveyance to Smith was made. Under these facts, we cannot say the chancellor erred in holding that Smith did not have actual notice of the 1916 voluntary conveyance, and this being true, under familiar law, his finding of fact will not be disturbed.

Is Smith barred by the statute of limitations (Ky. Stats., sec. 2519)? This contention of the appellants arises out of the fact that, although Smith purchased within ten years from the date of the voluntary conveyance, and although he immediately and before the expiration of the ten years entered into the possession of the overlap and has retained possession of it ever since, he did not set up his rights under section 1907 of the Statutes until after the ten-year period had elapsed. However, as the appellants and their predecessor in title had not remained in possession of the land for the ten-year period following the date of the 1916 deed, the rule laid

398

down in the Sewell case, supra, must be applied, and hence they cannot now rely upon it as a bar to the appellee's defense under section 1907 of the Statutes.

It follows then that the judgment of the chancellor, being in accordance with these views, is correct. It is therefore affirmed.