## Farber's Ex'r et al. v. Farber.

Nov. 22, 1940.

As Modified on Rehearing Jan. 24, 1941.

598

Blakey Helm, Trabue, Doolan, Helm & Stites and J. R. Eskridge for appellants.

P. M. Basham for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming in part and reversing in part.

This litigation started as a will contest, as may be seen from an examination of our first opinion reported in 282 Ky. 373, 138 S. W. (2d) 986. In that action, the plaintiff, Add E. Farber, appellee here, filed an amended petition averring that he was testator's son and his only heir at law; that his father at the time he executed his will and at the time of his death believed him to be dead and that plaintiff under Section 4842, Kentucky Statutes, was entitled to his father's estate. We held on the former appeal that this amended petition did not state grounds for contesting the will and, if testator at the time of its execution and at the time of his death believed the plaintiff were dead, the plaintiff would take the estate under Section 4842 as sole heir at law regardless of the will.

Proof was taken on the sole issue whether or not testator believed plaintiff, the claimant of the estate under the statute, to be dead at the time he executed the will and at the time of testator's death. The chancellor, Hon. George K. Holbert, Judge of the Ninth Judicial District, in deciding that issue in favor of the son delivered a written opinion which we have adopted:

"John Ulrich Farber, a resident of Cloverport, in Breckinridge County, died May 22, 1937, leaving a will dated June 23, 1927, and admitted to probate May 24th, of that year. In earlier life he had married Dollie Blair, June 13, 1903, and to them was

born, on March 11, 1904, the plaintiff, Add E. Farber, an only child. After a short married life together the parents separated, under circumstances that may not have been greatly the fault of either, and were divorced about 1907.

"For quite a number of years after the separation, and even after the divorce, Farber visited and corresponded with his former wife and the little boy, and showed a tenderness toward them and a fatherly interest in and affection for his son, at one time having a photographer in Cloverport make a picture for him from an old negative of the boy. At numerous times he is shown to have talked of the boy to his friends and neighbors. The mother had difficulty in making her way, working at what employment she could find over several different states, and at times leaving the boy with her mother. About 1909 she found employment in Evansville, Indiana, and upon the death of her mother in 1912 she took him away from Kentucky. He was then eight years of age. The correspondence between them and the father continued along until about 1917, then a letter to the father was not answered. She wrote again and in a little while her letter was returned to her—she said it had been opened. The correspondence ceased, and there is testimony that she told the boy that his father was dead.

"Numerous conversations, covering some ten or fifteen years before his death, in which Farber mentioned his son, are related in the evidence. He would speak of how old he would be if living; would wish he could hear from him or locate him; would like to educate him; was in a position to do something for him now; and in later years expressed repeatedly the belief that the boy was dead. These talks continued at intervals until the time of his death.

"A long line of witnesses who had known and been more or less intimate with John Ulrich Farber in his lifetime testified in the case. It is true that to some he stated that he did not know whether his son were living or dead, but these statements are shot through over a long period with such remarks as he 'thought he was dead,' 'guessed he was dead,'

'he must be dead,' and to a number of witnesses that 'he was dead.' To some he made the positive assertion; to others he made statements measuring well up to Webster's definitions of 'believe,' that is, 'to think; to suppose;' and of 'belief' as 'assent to a proposition or affirmation, or the acceptance of a fact, opinion or assertion as real or true, without immediate personal knowledge.' The very condition of a belief is that the thing is not known.

"On an occasion when he was depositing certain money in the name of 'J. P.' (the defendant), he told his banker that he wanted 'J. P.' to have the money in preference to his (defendant's) brother, Louis Ditzenbach, apparently at that time believing his son was dead.

"The defendant is a son of testator's sister, Kate Ditzenbach, also mentioned in the will, but who predeceased testator. So the estate (valued at some $15,000 or $16,000) must now go either to the defendant under the will or to plaintiff notwithstanding the will. In a former action this will was contested, and the jury returned a verdict against the will. * * * This present suit is prosecuted to determine the right of the plaintiff to the estate of his father, under the proven facts, irrespective of whether the will stands, and for distribution of the estate. It is bottomed on Section 4842 of the Kentucky Statutes, and alleges that the testator, at the time of the making of the will and at the time of his death, believed that his son was dead, and that under that section, there being no provision in the will concerning plaintiff, he takes regardless of the will.

"The main question of fact to be determined in the case is whether 'at the time of his death * * * and at the time of making the will,' the testator, John Ulrich Farber, believed his son, and only child, plaintiff, Add E. Farber, to be dead. That plaintiff is in fact the son of testator and his only child is clearly established by the proof introduced at the hearing. No testimony is offered that amounts to an issue on this question. The defendant's position on the main question, when analyzed, is no more than an argument from the testimony

heard that testator did not know that his son was dead, or at most that the quality of his belief was insufficient. Confronted with testator's own language, we cannot say that he did not have a belief. And incidentally, the fact that he remembered his boy and spoke kindly of him through the years, kept his picture, wanted to help him, was able to help, and not only did not do so, but by positive act willed his estate to another, is some evidence of what he believed as to his boy's being dead. The statute relied upon (Section 4842) did not require him to know, or to be able to find out. Its language as here pertinent is: 'If the testator has a child * * * living at the time of his death whom, then and at the time of making the will, the testator believes to be dead, * * * and no provision for or exclusion of such child * * * is made by the will, the child * * * shall take of the testator's estate as if he had died intestate.'

"This will contains no provision for or exclusion of plaintiff, and the proof establishes at the time of making the will and on to and including the time of his death testator believed his son dead. He did not have to know it; he did not have to have direct information on the question; as the statute does not even require reasonable grounds for the belief, or circumstances that might have thoroughly convinced testator or another. It sets no measure of diligence to ascertain the fact. If he believed it, from whatever source or on whatever grounds, then the statute is operative. The reason for this is apparent. A testator may believe even on insufficient evidence that his child is dead, and at the same time the child in fact be dead; or he may, with hope ahead, refuse, under humanly convincing circumstances, to believe that a child, in fact dead, is dead, but cling to the consoling belief that he will yet return. For that matter, in order for the statute to apply the testator must always be wrong in his belief. He might by sufficient diligence find out that his belief is in error; but it is the very existence of the belief that works the injustice in the will which the statute was enacted to correct. It is not the ground of belief, but the presence of it, that arrests the operation of the will. The reasons for the be-

lief may be such that few others would have so believed; but the question is, did the testator so believe? There is no 'except' or 'unless' in the statutory provision, but the belief, however induced or however it might have been removed, is made the controlling factor. It is not the fact of death, but the fact of the belief, that avoids the testamentary disposition as made.''

Appellant cited Knut v. Knut, 58 S. W. 583, 22 Ky. Law Rep. 972; Porter v. Porter's Ex'r, 120 Ky. 302, 86 S. W. 546, 27 Ky. Law Rep. 699; Logan v. Bean's Adm'r, 120 Ky. 712, 87 S. W. 1110, 27 Ky. Law Rep. 1081; Stebbins v. Stebbins, 94 Mich. 304, 54 N. W. 159, 34 Am. St. Rep. 345; Bachinski v. Bachinski's Estate, 152 Mich. 693, 116 N. W. 556, 125 Am. St. Rep. 427, but an examination of these cases shows they are not in point and do not deal with the question of whether or not testator believed his child was dead at the time of the execution of the will or at the time of his death. It is argued that the chancellor's opinion does not discuss the question of whether or not the will was due to the mistaken belief that his son was dead. The determinative question in this case is whether or not the testator believed his son dead at the time he executed this will. As the proof shows he did so believe, the will is brought within Section 4842. The chancellor's opinion fully and thoroughly discusses this issue.

We are asked to overturn the chancellor's finding of fact as it is based upon conflicting evidence. It is only when the evidence shows clearly and convincingly that the chancellor has erred that we will disturb his finding of fact. Mayhew v. McGlothlin, 269 Ky. 184, 106 S. W. (2d) 643; Gilbert v. Gilbert, 275 Ky. 559, 122 S. W. (2d) 137. The evidence in this case convinces us that the chancellor reached a correct conclusion and the judgment is affirmed.

Heard with this appeal was another appeal from the judgment entered by the chancellor in a suit brought by Farber against Ditzenbach as executor, and individually, to compel him to settle decedent's estate and to account for that part of same which he had received. Appellant argues nine reasons in his brief for reversing the judgment in this settlement suit, all of which vanish with the affirmance of the judgment in the action con-

cerning the will, with the exception of the fees the chancellor adjudged the executor and his attorneys, the court cost and the interest he adjudged appellant should pay. We will now dispose of these questions.

Although appellant was executor of decedent's estate, yet neither the litigation over the will, nor the suit to settle the estate, was for the protection of the estate, but was to determine whether or not Ditzenbach or Farber would take the estate. Practically all Ditzenbach did in settling the estate as executor was to turn it over to himself as an individual, and the services of the attorneys employed in both cases were for the most part performed in the behalf of Ditzenbach, rather than for the estate. For his services, the executor asked the maximum allowance of 5% under Section 3883, Kentucky Statutes, or $809.95, and the court allowed him $500. This estate was practically all in securities and the executor had very little to do and we have reached the conclusion that the chancellor was fair to the extent of liberality when he fixed the executor's allowance at $500. Stratton v. Wilson, 170 Ky. 61, 185 S. W. 522; Douglas' Adm'r v. Douglas' Ex'r, 243 Ky. 321, 48 S. W. (2d) 11.

The attorneys who represented the estate in the litigation over the will and in the settlement suit asked for a fee of $1,500 and the court allowed them $1,000. It is true they are outstanding lawyers and did considerable work, but the estate involved amounted to something between $15,000 and $16,000, and as their services redounded to the benefit of Ditzenbach and not to the estate, we are convinced the chancellor did not err in fixing the fees of the attorneys at $1,000. Counsel for Farber argue that these attorneys' fees should not be taxed against the estate as in reality the services were rendered for Ditzenbach and not the estate, citing Shields v. Shields, 192 Ky. 555, 234 S. W. 7; Goode v. Reynolds, 208 Ky. 441, 271 S. W. 600, 63 A. L. R. 631; Trevathans' Ex'r v. Dees' Ex'rs, 221 Ky. 396, 298 S. W. 975. However, Farber prosecutes no cross-appeal, therefore we cannot consider his objections to the allowance made by the chancellor to appellant's attorneys, or to any other allowances made by him.

The chancellor did not err when he adjudged Ditzenbach, individually must pay half of the court cost in

the settlement suit. Ditzenbach's action, in failing to turn over the estate to Farber after the chancellor adjudged the latter was entitled thereto, made the settlement suit necessary. Section 889, Kentucky Statutes, reposes a discretion in the chancellor as to the division of cost between the parties in a suit to settle an estate, and certainly the chancellor did not abuse that discretion in adjudging that Ditzenbach should individually pay one half of the cost of this settlement suit.

Nor did the chancellor err in decreeing that should Ditzenbach not comply with the judgment and turn over the estate to appellee as therein directed, he should pay interest on the corpus of the estate, also on the income he received thereon, from June 1, 1940. However, Ditzenbach will not be required to pay interest on any portion of the corpus of the estate which remains in the form of securities or choses in action left by the testator, since such securities and choses in action themselves produce dividends or pay interest. Such securities and choses in action which Ditzenbach has in kind as left by testator he will turn over to appellee without interest, but is only required to pay interest on the returns he has collected therefrom. Ditzenbach qualified as executor in May, 1937, and had turned over to himself individually all the assets of the estate with the exception of $310.00. In order to comply with the judgment of the chancellor all that was necessary for him to do was to deliver these assets to Farber. Section 3859, Kentucky Statutes, provides a personal representative shall be charged with interest on the surplus estate in his hands after the expiration of two years. Here Ditzenbach had been executor of this estate for over three years and had long before transferred practically the entire estate to himself individually and in October, 1939, the chancellor adjudged the estate should go to appellee. Certainly, appellant cannot be heard to complain that he was not given ample time within which to turn the estate over to Farber before interest was adjudged to start.

Appellant urges that under Maynard v. Maynard's Adm'r, 251 Ky. 246, 64 S. W. (2d) 567, 91 A. L. R. 697, he should not be required to pay interest on the estate remaining in his hands while the litigation was pending. However in the Maynard case, the portion going to a certain distributee was in litigation and the court prop-

erly held the administrator was not required to pay interest to such distributee while his portion of the estate was in litigation. But in the instant case Ditzenbach had practically the entire estate in his hands as an individual and was claiming to be the owner thereof, and after the court adjudged the estate to be the property of Farber and gave Ditzenbach a reasonable time within which to turn it over to him, it was proper for the court to adjudge that if he failed to do so by June 1, 1940, he should pay interest from that date on the estate remaining in his hands, but the chancellor should have excepted from interest that portion which remained in the same securities or choses in action left by the testator. A personal representative is chargeable with interest from the date he is ordered by the court to pay over the estate. Greenway's Adm'r v. Greenway, 266 Ky. 114, 98 S. W. (2d) 283. In this instance the chancellor correctly adjudged that unless Ditzenbach complied with his order and turned over the estate to Farber, he should pay interest from June 1, 1940. But the chancellor erred in not exempting from interest that part of the estate which remained in Ditzenbach's hands in the form left by testator and which Ditzenbach turned over to appellee in its original form. However, Ditzenbach must account for the dividends or income received therefrom with interest on such income or dividends from June 1, 1940.

The judgment in the will case is hereby affirmed, but the judgment in the settlement suit is reversed in part as to the item of interest, as the chancellor erred in ordering Ditzenbach to pay interest on that part of the corpus of the estate which he turned over to appellee in the original form Ditzenbach received it from testator.