## Williams v. Hunter.

May 22, 1942.

Stratton & Stephenson for appellant.

Burke & Sanders for appellee.

Opinion of the Court by Morris, Commissioner—Affirming.

Appellee, plaintiff below, in August 1939, filed petition in equity, asserting that he was the owner and in possession of two described tracts of land. He charged that Williams, defendant below, was claiming title to a portion of the lots, and had been trespassing by building walls and filling in a part of one of the lots. He sought injunctive relief, damages, and a quieting of title.

Williams denied the allegations of Hunter's pleading and in counterclaim alleged that he was the owner of

a tract specifically described, pleading title back to one Blackburn, a common grantor. He plead facts tending to show that any improvement by way of walls, etc., were in fact on his lot, as described in answer, and not on plaintiff's property. Tracing his title back to one Anthony Smith, Blackburn's grantee, he alleged that more than 13 years ago Hunter had filed forcible detainer action against Smith to recover a portion of the land "described in his answer," which upon hearing was dismissed. Further, that after Blackburn had conveyed to Anthony Smith the described tract, Blackburn's heirs undertook to recover a portion of the land in dispute in this action, which alleged disputed land adjoined the lands of Andy Hunter. A trial resulted in a denial of the claim of the heirs, and this court affirmed that judgment. Blackburn v. Smith, 236 Ky. 387, 33 S. W. (2d) 336.

At this point it may be said with relation to the detainer action between Hunter and Smith, no records were introduced, though parties testified as to what had occurred between the two; the record is uncertain as to whether the controversy involved a right of way mentioned in some of the deeds, or portions of the lot in dispute. As to the suit, it appears from a reading of opinion referred to, and reference to the old record, that there was involved the lot described in Williams' counterclaim, and neither party here was party in that suit.

Williams further plead that at all times since Blackburn conveyed the Smith tract, Hunter owned the adjoining tract, and there was a fence between the Hunter tract and the Smith (formerly Blackburn) tract, which had been recognized as a division fence; that Hunter had worked for defendant, and had stood by and watched him make improvements on the land now claimed by him, without objection. The foregoing allegations are relied upon by Williams as working estoppel against Hunter's claims. Williams did not become the owner of the tract described in his answer until shortly before Hunter filed his suit, and it is admitted that Hunter objected to the alleged trespasses by Williams, which continued after the granting of a restraining order, Williams contending that it did not affect him since he was making improvements on his own land.

He further plead that he is "the sole owner of and resides on the property described in his deed from Minda

and George Smith; that his deed covers and includes said property; that he holds title thereto extending to and beyond the title of common grantor Floyd Blackburn.'' He says that plaintiff's claim ''to any portion of said land is unwarranted, casting a cloud upon his title,'' which he asks to be removed; that Hunter's petition be dismissed and he be estopped to claim any interest in said property. This pleading does not make it clear that the Williams' deed includes any portion of either of the tracts set up in Hunter's petition.

In reply Hunter admitted that it might be true that Williams was the owner of the land described in his Smith deed, but that ''said description does not cover or include any of the land owned by plaintiff, as described in his deed from Lester, of date August 5, 1922.'' Hunter denied all material allegations of Williams' counterclaim, and alleged specifically that the land in controversy in the Blackburn-Smith suit did not include any portion of the land in dispute, and that he was not a party to the suit, or claiming any of the land conveyed to Williams.

The record fails to show denials of such portions of Hunter's reply as set up affirmative allegations; however, the chancellor apparently treated the issue as having been made, which, as we read the record, was whether or not the deed from Smith to Williams covered any part of the lands conveyed to Hunter. It is agreed that Hunter's title, and that of Williams, comes down from Floyd Blackburn.

Proof was taken by deposition; all title papers (copies) were filed, together with maps and photographs. Upon submission the chancellor adjudged that Hunter was the owner of the tracts described in his petition, and enjoined Williams from trespassing. From this judgment Williams appeals.

Floyd Blackburn had purchased a tract from Isham Blackburn in 1907, which was located in Damrontown, a mining district. He thereafter began to divide the tract, and sell lots for building purposes. Hunter was the purchaser of five lots, the title to only two being involved, they being the two described in his petition as tracts 1 and 2, and designated on the surveyor's map as ''A'' and ''E.'' Copies of deeds exhibited show the five various lots purchased by Hunter, other lots shown on the

map being noted by the surveyor for the purpose of establishing the northern line of the properties, and other lines or corners.

Blackburn sold lot "A" to Lester and others on October 16, 1913; they conveyed by commissioner to J. H. Lester, January 9, 1920, and Lester to Hunter August 5, 1922. Blackburn conveyed to Hunter lot "E" December 18, 1923. Blackburn conveyed the Williams' tract to Anthony Smith July 13, 1925; Anthony conveyed to Minda Smith October 19, 1931, and she and her husband conveyed to Williams August 12, 1939. Copies of deeds manifest that Hunter had purchased all his lots, save "C," prior to the Anthony Smith deed, and "C" was conveyed prior to Williams' deed from the Smiths. From our observation of these numerous deeds, going back to the Isham Blackburn deed, it is impossible to tell whether or not there is an overlapping on the Hunter's tract, which was first conveyed.

The map in evidence was made by Arthur Fields, admittedly a qualified and competent surveyor. He went upon the ground, and having Hunter's deeds and the assistance of an adjoining landowner, located corners called for in Hunter's deeds. He testified that Hunter's deeds embraced all of lots "A" and "E," and just as positively that Williams' deed did not cover any portion of either. His testimony showed that the wall which Williams had commenced to build, was on and partly across lot "A."

Appellee introduced in his behalf the remote grantor Floyd Blackburn, who testified to facts which would lead to the conclusion that he had sold lot "A" to Anthony Smith, and undertakes to show by such physical facts as location of buildings, some of which were burned before the conveyance to Smith, that he had sold him the lot and that his grantee, the Lesters, former owners of the lot, had recognized that they did not own the tract claimed by Williams; his testimony with reference to the location of buildings and passways, was corroborated by other witnesses. On cross-examination his memory seemed to be bad on some points; his testimony was indefinite as to sales of lots to several persons who had conveyed to Hunter. However, he was pretty sure that he had sold "several lots in that boundary, and what I sold to Anthony covered the piece of ground that Henry Williams owns today," though he had no intention nor

undertook to convey any property which had already been conveyed to the Lesters.

Williams testified that the deed from Smith covered the tract described in his pleading. He presented a drawing of the lots (in part) and the buildings. Apparently this drawing was made, not from survey or reference to deeds, but from what Minda Smith's husband had pointed out to him. He said that they were about to trade and he and George looked the situation over. Smith pointed out a chestnut tree on the hill (which does not appear to be a corner) and the cliff. Smith then said, "Come over here and I will show you where a steel post ought to be." Smith told him that his line ran from the steel post to the cliff, and then to the chestnut tree. Williams then told Smith he would go to Pikeville and "certify the copies" of deeds, and he says he got copies of the deeds, "and I could see the cliff and the chestnut tree, and me and Smith traded and I went to improving." There was found by Williams some sort of iron or steel piece buried under the ground after he began digging for his wall, the point being indicated on his map, within the boundary of "A," but not in line with the calls in Hunter's deed from Lester, or in line with other Hunter deeds.

There is considerable argument in briefs as to locations of fences, and other objects which might tend to indicate that Hunter or prior owners of the Smith tract had thereby established certain lines, and which might be of importance one way or the other, if there were presented a question of actual adverse peaceable possession. Since there is no such claim, it is unnecessary to discuss these matters. This was a case depending on facts for its solution.

In such cases the rule is that the chancellor's findings must be given weight; if there be no more than a doubt existing in the mind of the reviewing court, the decision of the chancellor must stand. Adkins v. Osborne, 275 Ky. 613, 122 S. W. (2d) 515, and cases cited in Kentucky Digest, Appeal and Error, Key Number System 1009(1). It is only where the evidence convinces the court that the chancellor has erred in weighing the evidence that his judgment will be disturbed. Farber's Ex'r et al. v. Farber, 285 Ky. 596, 148 S. W. (2d) 732. With this rule firmly established and applicable here, it follows that the judgment must be and is affirmed.