## Ratliff v. Ratliff.

### Same v. Same.

(Decided February 10, 1922.)

## Appeals from Pike Circuit Court.

1. Divorce—Restoration of Property.—Sections 2120 of the statutes and 425 of the Civil Code of Practice require that under proper application made therefor all property acquired by either spouse in consideration or by reason of the marriage to be restored to the one from whom it was acquired upon the granting of a divorce, but no such restoration is required when the property was acquired, not in consideration or by reason of the marriage, but for a valuable consideration.

2. Divorce—Restoration of Property.—Before the passage of sections 2127 and 2128, parts of what is known as the "Weissinger Act," a husband was entitled to collect and appropriate the rents of his wife's general real estate and to reduce to possession, and appropriate the general personal property, but such marital rights could be waived by the husband by his election to hold such general property of his wife as her trustee and any conveyance or

transfer of property made by him during the marriage in settlement of her equitable title to the property so held by him as such trustee would not be acquired by the wife in consideration or by reason of the marriage, but on the contrary would be acquired by her for a valuable consideration and the husband would not be entitled to have it restored to him upon obtaining a divorce from her.

3. Divorce—Restoration of Property.—Where the judgment allowed the wife to retain all the property held by her which the proof clearly shows she acquired for a valuable consideration and which was not subject to be restored, and in addition thereto bank stock to the value of $2,500.00 and the evidence leaves it doubtful whether it was acquired in consideration or by reason of the marriage, or for a valuable consideration, and all the property so allowed to her equals half of the combined property of both husband and wife, the court properly refused to allow the latter any additional sum to be paid by the husband out of the portion allotted to him.

4. Divorce—Attorney's Fees.—Under the provisions of section 900 of the statutes it is proper for the husband to pay as a part of the cost a reasonable attorney fee to his wife in all cases where she is not in fault, although she may have ample property of her own.

O. A. STUMP and WILLIS STATON for appellant.

E. C. O'REAR and J. E. CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing the judgment on the original appeal and affirming it on the cross appeal; and affirming the judgment in the second appeal.

The first appeal above is from a judgment of the Pike circuit court in an action filed therein by appellee, Joel Ratliffe, against his wife, the appellant, Harriett Ratliff, in which plaintiff sought a divorce from her and the restoration of certain described property to which she held title and which it was alleged in the petition that she had obtained from plaintiff ''during the marriage in consideration thereof,'' which restoring relief is provided by section 2120 of the statutes and section 425 of the Civil Code of Practice. The latter section also contains this provision, ''And any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage,'' thereby impliedly saying that if the property was obtained for a valuable consideration it would not be deemed to have been obtained by reason of marriage and would not be subject to restoration. The ground alleged for the divorce was wrongful

abandonment of plaintiff by defendant for one year before the filing of the petition, and that defendant's temper and treatment of plaintiff was such as to prevent him living with her. The answer was a denial, and by counterclaim it was alleged that plaintiff had treated defendant for more than six months next before filing of the answer "in such cruel and inhuman manner as to indicate a settled aversion to her" and to destroy permanently her peace and happiness, and that he was guilty of such violent acts and threats toward her as indicated an outrageous temper in him and probable danger to her life or great bodily injury to her from her remaining with him. It was further alleged in one of defendant's pleadings, and also stated in brief of her counsel, that plaintiff "kept company with lude and unchased women;" and also stated in brief that "It is fair to say that they were never correctly joined," though there was born to them a male child, Ralph Ratliff, who died intestate on February 19, 1917, and who was married at the time of his death and he left a widow but no children. Appropriate pleadings made the issues and upon final submission the court granted the divorce to both parties and adjudged their property rights, and that plaintiff should pay only one-half of the fee allowed defendant's attorneys, from which (except that portion granting a divorce) defendant prosecutes this appeal, and plaintiff has obtained from this court a cross appeal from the same part of the judgment.

The second appeal above is from a judgment sustaining a demurrer to and dismissing the petition filed by defendant in the first action to obtain a new trial thereof under the provisions of section 518 of the Civil Code. The two appeals have been heard together in this court and will be disposed of in one opinion and they will be determined in the order named.

Without reciting the evidence, we deem it only necessary to say that we do not regard it sufficient to sustain the judgment in granting a divorce to the husband. In the first place it fails to show any abandonment in fact for the requisite time, and what actually occurred was not because defendant left plaintiff but because he took up his abode elsewhere, leaving her in the occupancy of their residence, but which act on his part he claims was brought about by her excessive temper and abuse of him, which we think is unfounded in fact. Since, however, we

are not authorized to disturb the judgment granting to the husband a divorce, and can look to the testimony only for the purpose of determining the property rights of the parties, we will not enter into a detailed discussion of the testimony relating to the grounds of divorce.

The parties were married in February, 1883, and at that time the husband had but little, if any, personal property, but he owned a one-half undivided interest jointly with his father in a tract of land upon a part of which is now situated the mining town of Hellier. It was remotely situated at the time and cost the owners only $600.00. After the marriage the wife continued to teach school, as she had done before, and taught four schools for which she received $125.00 each, and it clearly appears from the testimony that the total sum of $500.00 was collected and kept by the husband, and with $300.00 of it he purchased from his father the latter's half interest in the farm, taking the deed to himself. The husband appears to be reasonably industrious, but not to the extent of the wife, who was exceptionally so; she managed the farm as well as the household in which were kept on numerous occasions boarders whom she provided and cared for, while the husband was either actually or ostensibly away working at getting out timber for others, or in other engagements requiring his absence from home. During that time the wife cultivated and looked after the garden and performed other duties more appropriately belonging to the husband, including that of running and operating a grist mill located on the place which was run with water power. The testimony shows that defendant was rather strong minded and perhaps to some extent stubborn, but this produced no more than occasional family jars, termed by some of the witnesses "family fracases," and as said by some of them "it was tit for tat" between the two upon such occasions, but nothing is proven against the appellant measuring up to any of the statutory grounds for a divorce.

Plaintiff contends that after the death of their only child, Ralph Ratliff, defendant developed a more quarrelsome disposition towards him and finally became unbearable, forcing him, in the exercise of what he claims to be his legal rights, to abandon their home, and in this way he insists that his actual abandonment was in law attributable to his wife and produced through her fault alone. The testimony furnishes no ground for any such

contention.   The defendant, like all true mothers, was very much attached to her only child and was greatly grieved, troubled and perturbed because of his death, which occurred in a personal combat.   While thus grieving and laboring under more or less nervousness she would sometimes upbraid herself as well as her husband for returning from the Lincoln county farm to their home place, and in this way she blamed both of them for the death of Ralph.   She suffered with insomnia and because of it her husband declined to occupy the room with her, and in her lonely wakefulness she sought solace by going to his room to converse with him, but instead of trying to comfort, soothe, sympathize with and console her he was rudely abusive and failed altogether to recognize or perform his duties under the circumstances to his distressed companion, who had never faltered in her efforts to improve the condition and comforts of the family. We have yet to learn that such conduct on the part of a grieved mother and wife is sufficient in law to authorize her husband to abandon her and to charge his act in so doing to her fault.

Eventually a railroad was built across the land, and $1,625.00 was paid for the right of way.   Considerable sums were obtained for timber sold therefrom and portions of it were sold to other parties and in these various ways quite a sum of money was realized.   It appears from the evidence that the husband, from the time he bought the half interest of his father in the land and paid for it with his wife's money, acknowledged the latter's equity and regarded her as a half owner thereof.   Carrying out this idea he gave her from time to time portions of the money received as hereinbefore stated, and he had deposited in a bank to his credit something more than $6,500.00, and on February 2, 1914, he gave to his wife a check for $3,000.00, which she deposited to her credit.

At the time of the filing of this suit there was left of the original tract of land, known in this record as the "home place," only twenty-five acres, upon which were located the residence and some twenty or more small shacks and some larger frame buildings, one of which was used as a moving picture show and another one as a billiard hall, and others for different business purposes, the total rental from which was about $100.00 per month; all of it was worth, according to some of the testimony, and the finding of the court, about $30,000.00.

On January 23, 1915, the parties purchased a farm in Lincoln county for which they paid $5,000.00, $3,000.00 of which was paid by the wife and $2,000.00 by the husband, and the deed was executed to Mrs. Ratliff for life and after her death to the son, Ralph Ratliff. They moved to that place and occupied it about eight months when they returned to their old home and on November 13, 1916, the Lincoln county farm was exchanged for another one in Pike county, known in the record as the "Vanover place," the deed to which was executed jointly to Mrs. Ratliff and her son, Ralph Ratliff, and the $500.00 difference in the two places was paid to Mrs. Ratliff.

On March 23, 1917, the husband, in consideration of "one dollar and other valuable considerations," conveyed to the wife a one-half undivided interest in the remaining twenty-five acres of the "home place." A number of other transactions, which are disclosed by more or less obscure statements of the witnesses, appear to have been made by the parties jointly and separately in which they each realized additional sums. to those hereinbefore mentioned, but the evidence is not clear as to them, nor is there filed any papers or documents evidencing their true nature; one of them is, that during the time the wife acquired stock in a bank of the par value of $1,000.00, but which is now, according to the proof, worth $2,500.00. The wife claims that she sold a piece of land to which she had title to one Gibson and obtained the money with which she bought that stock, while the husband denies her statements. Their testimony upon such matters was not objected to as incompetent and for that reason we may, as the court did below, consider it.

Under this state of the proof the court allowed each party to retain what personal property they had, and adjudged the wife to be the owner of only one-third of the "home place" instead of one-half, as she contends; and that she was the owner of only one-half of the Vanover place instead of three-fourths, as she contends. Her counsel also insist that the judgment is erroneous in not allowing her alimony out of the portion adjudged to the husband. From the condition of the record, as above outlined, we are clearly of the opinion that the court was in error in not adjudging to defendant a one-half interest in the "home place" and in not adjudging to her a three-fourths interest in the Vanover place. According to the sections of the statute and Code, *supra,* there can be no restora-

tion of property in cases of this kind where the spouse obtained the title for a *valuable consideration*, and we have so held in a number of cases, the latest of which is Jarboe v. Jarboe, — Ky. —.  See also Dunn v. Dunn, 183 Ky. 844.  So that, if Mrs. Ratliff obtained title to her interest in the two places for a valuable consideration the court had no right to restore to her husband and part of it.

We have seen that one-half of the "home place" was paid for with money earned by the wife in teaching school, which fact we think is clearly established by the testimony.  At that time, which was before the enactment of the statute in 1894, known as the Weisinger act (now sections 2127 and 2128 of the statutes), the husband was entitled to collect and appropriate to his own use the rents from his wife's real estate, and to reduce to possession her entire personal property (if not held by her as her separate property), which, if done, converted the title thereto in himself, and it is, therefore, argued that when the plaintiff in this case collected and appropriated his wife's salary for teaching school it became absolutely his and all subsequent income and profits which issued out of and were obtained from the tract of land in which it was invested likewise belonged absolutely to him, and that all of the sums that he subsequently gave to his wife, as well as the deed which he made to her for half of it, were each "in consideration or by reason" of the marriage, and should, therefore, be restored to him upon the granting of the divorce.  The same argument is made with reference to the obtention of the title by the wife to the Lincoln county farm, three-fifths of which was paid for by the wife, but which (as contended) was with money furnished to her by the husband "in consideration or by reason" of the marriage; and that the exchange of that farm for the Vanover place did not change the status of the title so as to deprive the husband of his right of restoration upon the obtention of his divorce.  It is, therefore, insisted that all of either of the two places which the wife was entitled to hold was an undivided one-fourth interest in the Vanover farm which she inherited from her deceased son, subject to the dower right of his wife.

Whether the position of plaintiff's counsel would be true if the facts established an unconditional and absolute appropriation by the husband of the personal property of the wife with which one-half of their original

"home place" was purchased, as applied to restoration rights in divorce cases, is a question which we need not determine, for this court has in a number of cases announced and applied the rule that a husband, before the enactment of the Weisinger act, might waive his marital rights in and to his wife's property and acknowledge her equity therein, and thus create himself a trustee for her, holding the title not as beneficiary but as such trustee. One of the latest cases in which this question was presented was that of Tolly v. Champion, 191 Ky. 114, and in answering the same contention therein as is here made, we said:

"Answering the first objection to the allowance of the claim now under consideration it may be stated that the law as stated by counsel with reference to the existence of the right of the husband, before the passage of the Weisinger act, to collect and appropriate the rents of the wife's land, and that this right continued after the passage of that act as to land acquired by her before then is correct. It does not follow, however, that the claim should be disallowed for that purpose because it was held in the cases of Bohannon v. Bohannon, 29 Ky. L. R. 143; Owsley v. Owsley, 25 Ky. L. R. 1194, and Gilliam v. Gilliam, 146 Ky. 15, that a husband might waive his marital rights in and to the property of his wife, and also waive his interest in the rents and proceeds thereof, and to thereby convert himself into a trustee for her and hold such property, which would otherwise (under his marital rights) be his, for the use and benefit of his wife. Those cases furthermore say that if the evidence is sufficient to show such waiver on the part of the husband, his estate, after his death, may be made to account to the wife for the money or property so held by the husband as her trustee."

The cases referred to in the excerpt fully support the rule as do many others which might be cited. It is also thoroughly settled that even creditors of the husband who became such after the conveyance may not attack a transfer of his property to his wife if it was made in settlement of her equitable right growing out of the appropriation of her property by her husband, although he had the right without acknowledging such equity to absolutely appropriate it.

We are, therefore, constrained to hold that there was a valuable consideration for the wife's title to the two

tracts of land which the husband seeks to have restored to him, and this was also held by the learned judge who tried the case, but for some reason he concluded that the wife was not entitled to all of the cash or other personal property which the husband had transferred to her, notwithstanding it was not as much as one-half of the issues and profits from the land which they jointly owned by their acquired title in the manner hereinbefore stated. In this we think he was in error, and that he should have adjudged the wife a one-half undivided interest in and to the "home place," and that the judgment dividing it should be modified so as to give the wife that interest. We have seen that the deed to the Vanover place vested in the wife a one-half undivided interest in it, and that she inherited another one-fourth interest therein from her deceased son, subject to the dower rights of his widow. The judgment should, therefore, be modified so as to give her a three-fourths undivided interest in that tract, one-third of which will be burdened with the dower right of the son's widow and who will also have the same right in the one-fourth adjudged to the appellee.

It is also urged by counsel for appellant that she was entitled to judgment against the husband for alimony in addition to the adjustments of the property rights as above indicated, but in as much as the judgment, with the modifications herein ordered, gives to the wife practically half of the combined property owned by both parties, we are inclined to hold that equity has been administered, which is all that is required or can be demanded in this character of case. Besides, it is not altogether clear whether the wife is entitled to the bank stock mentioned under the principles hereinbefore discussed, and if not its retention by her would be sufficient alimony were we to place her right to its retention solely upon that ground. There is no hard and fast rule governing the amount of alimony to be adjudged the wife in cases where she is entitled to it, and where, as under the circumstances in this case, the demands of equity appear to be satisfied, we do not feel that we should go further and take an additional sum from the portion of the property allotted to the husband and bestow it upon her.

Complaint is also made on the original appeal that the court required plaintiff to pay only one-half of the fee allowed to his wife's attorney, which complaint we think is well founded. Section 900 of the statutes says: "In

actions for alimony and divorce, the husband shall pay the costs of each party, unless it shall be made to appear in the action the wife is in fault and has ample estate to pay the same." In construing that section we have not only held that the "costs" therein provided for include a reasonable attorney's fee to the wife, but that it should be paid by the husband when the wife was not in fault although she has ample estate of her own. One of the latest cases so construing the section is Honaker v. Honaker, 182 Ky. 38. In the opinion it is said: "Section 900 of the Kentucky Statutes compels the husband in an action for alimony or divorce, to pay the wife's costs, as well as his own, unless it be made to appear that the wife is in fault and has ample estate to pay the same, and the costs of the wife which he must pay include a reasonable fee to be fixed by the trial court for her attorneys. Edleson v. Edleson, 173 Ky. 252; Wills v. Wills, 168 Ky. 35. As the wife in this case was not shown to have been in fault, although she has ample estate, the husband must pay her costs, including a reasonable attorney's fee." Since the wife in this case, as we have seen, was not in fault, the attorney's fee allowed to her should be paid entirely by the husband.

On the cross appeal counsel for appellee insists that the court erred in giving to the appellant a greater interest in the property than she was entitled to. What we have said, however, disposes of this contention and we deem it unnecessary to reiterate our reasons for disagreeing therewith.

The petition in the second appeal sought a new trial in the original case because of alleged fraud of the husband in secreting some property which it is claimed was not considered by the court in disposing of the original case. The larger portion of that alleged discovered property was an interest in a restaurant in Hellier, but it appeared in the original case that appellant knew all about that, and no fact is alleged in her petition showing any effort on the part of the husband to secrete any of his property. Besides, if that property was brought into the case we doubt if it would be sufficient to alter the original judgment any more than we have above indicated. That petition referred to and made the proceedings in the original case a part of it, and considering the allegations of the petition in connection with the record referred to, we are clearly of the opinion that there was a failure to

allege facts sufficient to justify the court in opening up the original case, or to in any wise alter the judgment therein.  The appellant answered the original suit, and gave an intelligent deposition therein, and it completely appears in that record that she was fully possessed of her mental faculties, which refutes the allegation to the contrary made in the petition for a new trial.  We therefore conclude that the court properly sustained the demurrer thereto and dismissed it upon refusal of the plaintiff to amend.

Wherefore the judgment on the original appeal is reversed with directions to modify it as herein indicated, but on the cross appeal it is affirmed; and the judgment in the second appeal is affirmed.