PETITION FOR WRIT OF MANDAMUS OR, IN THE ALTERNATIVE, PETITION TO DECLARE UNCONSTITUTIONAL DISCIPLINARY RULES 2-102 (A)(7)* AND 2-106 (a)(1)* OF THE ALABAMA CODE OF PROFESSIONAL RESPONSIBILITY OR, IN THE ALTERNATIVE, PETITION FOR THE COURT TO AMEND DISCIPLINARY RULES 2-102 (A)(7) AND 2-106 (A)(1) OF THE ALABAMA CODE OF PROFESSIONAL RESPONSIBILITY
* Disciplinary Rules 2-102 and 2-106 were rescinded effective October 25, 1985, and were, in effect, replaced by provisions in Temporary DR 2-101 through Temporary DR 2-106 adopted effective that date.
Allen Howell, a Montgomery lawyer, seeks a writ of mandamus from this Court to the Alabama State Bar to require it to allow him to include in newspaper advertisements information which is not allowed by the Code of Professional Responsibility of the Alabama State Bar. Howell contends that the provisions of the Code of Professional Responsibility which prohibit him from representing that he has been certified as a "civil trial advocate" by the National Board of Trial Advocacy (NBTA) *Page 849 
violate the First Amendment protections of commercial speech as extended in the United States Supreme Court's opinions of Batesv. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691,53 L.Ed.2d 810 (1977), and In re R.M.J., 455 U.S. 191,102 S.Ct. 929, 71 L.Ed.2d 64 (1982).
Canon 2 of the Code of Professional Responsibility of the Alabama State Bar, as amended October 25, 1985, contains the following provisions:
 "Temporary DR 2-101 Communications Concerning A Lawyer's Services
 "A lawyer shall not make or cause to be made a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:
 "(A) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;
 "(B) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the rules of professional conduct or other law; or
 "(C) compares the quality of the lawyer's services with the quality of other lawyers' services, except as provided in Temporary DR 2-104."
 "Temporary DR 2-104 Communication of Fields of Practice
 "A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except as follows:
 "(A) A lawyer admitted to engage in patent practice before the United States Patent and Trademark Office may use the designation `patent attorney' or a substantially similar designation;. . . ."
Before placing advertisements in local newspapers, Howell sought an ethics opinion from the Bar Association as to whether he could advertise the fact that he was certified as a civil trial advocate by the NBTA. He proposed to indicate his certification in a "dignified" manner, using type which would be consistent in size with the other type in the advertisement. In concluding that such a representation would violate the Code of Professional Responsibility, the Bar Association reasoned that, since the State Bar does not have any procedures for certifying lawyers as specialists, it would be inappropriate for an attorney to hold himself out as a specialist except in the historically accepted fields of admiralty and trademark and patent law.
In Bates v. State Bar of Arizona, 433 U.S. 350,97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Supreme Court extended the First Amendment protection of commercial speech to lawyers' advertisements by striking down the states' right to subject lawyer advertising to a "blanket suppression." That opinion established the right of attorneys to advertise the fees they charge for certain routine legal services. It did not address the "peculiar problems" associated with advertising related to the quality of legal services, and it expressly recognized that advertising by professionals poses special risks of deception because of the perceived lack of sophistication on the part of the general public concerning legal services. 433 U.S. at 366,97 S.Ct. at 2700.
The Court explained its position on lawyer advertising in Inre R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). The lawyer's advertisement in that case had listed the areas of his practice in terms other than those provided for by Missouri's rules governing lawyer advertising. For instance, the lawyer advertised that he practiced "personal injury" and "real estate" law instead of "tort" law and "property" law as was provided for in the rules. The lawyer was also charged with failing to include a disclaimer of expertise; with sending announcements to persons other than "lawyers, clients, former clients, personal friends and relatives;" and with listing the courts and states which had admitted him to practice. The lawyer challenged all of the prohibitions but did not challenge *Page 850 
the validity of the disclaimer requirement. The Court ruled that restricting the permissible designations which the lawyer could use to describe his practice to those designated by the rule was an invalid restriction of his First Amendment rights. It concluded that the state could not enforce the rule in the absence of a showing either that the representations which the lawyer used were misleading or that a substantial state interest was promoted by the restriction. As to the prohibition against listing the jurisdictions in which the lawyer was admitted to practice, the Court ruled that the representations could not be subjected to a blanket restriction simply because they were potentially misleading. Finally, the Court struck down the prohibition against mailing announcements to persons other than "lawyers, clients, former clients, personal friends and relatives" because it considered the regulation to be more extensive than necessary to serve the governmental interest which the state sought to further by the regulation.
Based on our reading of Bates, R.M.J., and other Supreme Court opinions concerning the regulation of commercial speech, it appears to us that the state's power to regulate lawyers' advertising may be summarized as follows:
 (1) Advertising which is false, deceptive, or misleading may be prohibited entirely.
 (2) Advertising which is presented in a way that is not deceptive, but is nonetheless potentially misleading, cannot be subject to a blanket prohibition. In those cases the state may require disclaimers or explanations or impose whatever other restrictions are necessary to prevent deception.
 (3) Advertising which is neither inherently nor potentially misleading may be regulated only if there is some substantial state interest involved. In that instance the state may promulgate regulations which are narrowly drawn so that they limit free speech only to the extent that the regulations further the state's substantial interests.
See Bates, supra; R.M.J., supra; Central Hudson Gas ElectricCorp. v. Public Service Comm'n, 447 U.S. 557, 100 S.Ct. 2343,65 L.Ed.2d 341 (1980); Friedman v. Rogers, 440 U.S. 1 (1979);Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 98 S.Ct. 1912,56 L.Ed.2d 444 (1978).
The issue in this case is whether Alabama's blanket prohibition against lawyers' holding themselves out as specialists violates their constitutional guarantees of free speech. The rationale for the Bar Association's position is that it prohibits lawyers from holding themselves out as specialists because it has neither a rating system for classifying lawyers according to their ability nor any mechanism for identifying lawyers as specialists. Upon passing the bar examination, all lawyers are presumed to be on an equal footing. The Bar Association argues that an advertisement containing a certification of specialty by a private organization might well imply a degree of expertise which is not warranted.
The question of a lawyer's holding himself out as a specialist is closely related to the question of a lawyer's representation of expertise. Implicit in a claim of specialization is the assumption that a specialist in a given field possesses more knowledge and experience in dealing with problems within that field than non-specialists. Because the Bar Association has no mechanism for determining the relative abilities of different lawyers, this Court has recognized that lawyers' representations about the quality of their services could very well mislead the public. Therefore, we have upheld the requirement that lawyer advertisements include a disclaimer of expertise. Mezrano v. Alabama State Bar, 434 So.2d 732, 735
(Ala. 1983); Lyon v. Alabama State Bar, 451 So.2d 1367, 1373
(Ala. 1984).
One other state supreme court has addressed the problem of advertising specialty certification. In In re Johnson,341 N.W.2d 282 (Minn. 1983), a lawyer was admonished by the Minnesota Bar Association for advertising his certification as a "civil *Page 851 
trial specialist" by the National Board of Trial Advocacy. A panel of that state's Board of Professional Responsibility, which convened for the purpose of hearing the charges against Johnson, found that, although Johnson's advertisement was not misleading or deceptive, it nonetheless violated the Minnesota Bar Association's prohibition against lawyers' holding themselves out as specialists. In discussing the constitutionality of that prohibition, the Supreme Court of Minnesota recognized that members of the general public "could be misled by claims of specialization when no guidelines for specialization have been drawn." 341 N.W.2d at 285. The court was bound in that case, however, by the panel's finding of fact that the advertisement was not misleading or deceptive. On the basis of that evidentiary finding, the Minnesota court concluded that a blanket prohibition on all commercial speech regarding all legal specialization was unconstitutional because it was broader than necessary to protect the public. 341 N.W.2d at 285.
Our Bar Association in the present case argues that an advertisement of a specialty constitutes a representation of quality or expertise which is inherently misleading. While it in no way disparages the integrity or validity of the National Board of Trial Advocacy or its certification procedure, the Bar Association points out that permitting advertisements of achievement or specialty might spawn spurious certifying organizations whose certifications would be meaningless.
The petitioner and the Association of Trial Lawyers of America, as amicus curiae, made arguments regarding the quality of the NBTA's certification procedure. They point out that the NBTA is the legal profession's only national agency certifying civil and criminal trial specialists. The State of Florida patterned its specialization certification program on the NBTA's program, and Virginia allows attorneys certified by the NBTA to express that fact on their firms' letterheads.
Blanket prohibitions such as the one in question may be used to prohibit a representation which is false, deceptive, or misleading either on its face or in actual practice. See In reR.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982);Friedman v. Rogers, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100
(1979); Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447,98 S.Ct. 1925, 56 L.Ed.2d 444 (1978). Blanket prohibitions cannot be enforced, however, to prohibit a representation which is not deceptive on its face or in practice even if the representation is potentially misleading or deceptive. See In re R.M.J., supra, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64
(1982). The public should be protected from potentially misleading representations by restrictions which are no broader than necessary to achieve that end.
It would be less than realistic for us to take the position that all lawyers, in fact, possess equal experience, knowledge, and skills with regard to any given area of legal practice. Although there is presently no state-sanctioned mechanism for identifying legal specialists, it appears to us that a certification of specialty by the NBTA would indicate a level of expertise with regard to trial advocacy in excess of the level of expertise required for admission to the bar generally. We conclude, therefore, that Howell's proposed advertisement of certification by the NBTA as a civil trial advocate would not be misleading or deceptive on its face.
The writ is granted conditionally. We direct the Bar Association to formulate a proposed rule and a method for approving certifying organizations such as the NBTA before allowing the certifications to be advertised. Such a procedure, in combination with the existing requirement of review by the Bar Association of all legal advertisements (see Temporary DR 2-102 (B)), will reduce the possibility of spurious certifying organizations being used to mislead the public.
The Bar Association is given six months from the date the certificate of judgment is issued in this case within which to draft a *Page 852 
proposed Rule of Disciplinary Enforcement for approval by this court, which proposed rule should be consistent with this opinion.
WRIT GRANTED CONDITIONALLY.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
HOUSTON, J., recused.