**Robert McKim NORRIS, Jr., Plaintiff,**

**v.**

**Edward P. TURNER, et al., Defendants.**

**No. 85–AR–3192–S.**

United States District Court,
N.D. Alabama, S.D.

June 30, 1986.

Ralph Ogden, M. Anne Wilcox, Wilcox & Ogden, Golden, Colo., Edward Still, Reeves and Still, Birmingham, Ala., for plaintiff.

Roger H. Bedford, Sr., Bedford, Bedford & Rogers, P.C., Russellville, Ala., pro se.

William H. Morrow, Jr., General Counsel, Ala. State Bar, Montgomery, Ala., for all defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration the application of plaintiff, Robert McKim Norris, Jr., for attorney's fees and expenses pursuant to 42 U.S.C. § 1988 against defendants, the members of the Board of Bar Commissioners of the State Bar of Alabama, and the members of its Disciplinary Commission. The court conducted an evidentiary hearing on May 22, 1986, limited to the question of plaintiff's disputed entitlement to such fees and expenses. In finding the following facts leading to an answer of this question, the court has not read nor considered the deposition of Norris which was not offered by defendants until after the record was closed. However, because at the evidentiary hearing both plaintiff and defendants referred to matters, including an affidavit, contained in briefs, although not previously filed by the Clerk, the court considered these materials without objection and therefore will order the materials to be filed by the Clerk and included in the official record.

### FINDINGS OF FACT

On and prior to May 17, 1983, Disciplinary Rule 2–101(A)(7)(d), governing certain conduct of members of the Alabama Bar, provided:

Disciplinary Rule 2–102(A)

A lawyer or a law firm shall not use professional cards, professional announcement cards, office signs, letterheads, telephone directory listings, law lists, legal directory listings, similar professional notices or devices or newspapers, except that the following may be used if they are in dignified form:

\* \* \* \* \* \*

(7) Commercial advertising by lawyers is permissible, subject to the following limitations, qualifications, and requirements:

\* \* \* \* \* \*

(d) *No advertisement shall be made except in print media distributed in the*

*geographical area in which the lawyer resides or maintains bona fide offices.* (emphasis supplied).

Another Disciplinary Rule then existing required the following disclaimer in every attorney's advertisement:

*No representation is made about the quality of legal services to be performed or the expertise of the lawyer performing such service.* (emphasis supplied).

All such Disciplinary Rules were then and are now promulgated by the Supreme Court of Alabama, which is vested with the sole power to legislate the rules of conduct for attorneys in Alabama and is the ultimate tribunal for administering discipline to members of the Bar. Neither the Board of Bar Commissioners nor its Disciplinary Commission has any power except the power to *recommend rules,* to *interpret rules,* and to *bring charges* for alleged violations of rules.

On September 8, 1983, R.B. Jones, a licensed attorney admitted to practice in the State of Alabama, filed a petition with the Supreme Court of Alabama asserting that said Disciplinary Rule 2–102(A)(7)(d) was unconstitutional in that it denied Jones "and all others desiring the use of electronic advertising their Constitutional Rights". Jones' petition asked that he be allowed to advertise by electronic media and that the Supreme Court "revise the Disciplinary Rules to conform with the decisions of *Bates vs. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *In the matter of R.M.J.,* 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), and other cases decided by the United States Supreme Court".

As of September 8, 1983, DR 2, as noted, limited lawyer advertising to the print media and required that any advertising contain a disclaimer to the effect that no representation was being made about the quality of the legal services or the expertise of the lawyer. On May 16, 1983, prior to filing his petition with the Supreme Court, Jones had sought an ethics opinion from the Disciplinary Commission which would, in effect, have allowed him to advertise in the electronic media. The reaction of the Disciplinary Commission was to advise Jones of its intent to enforce the prohibition against non-print advertising. Jones' request for an opinion by the Disciplinary Commission was in compliance with procedures available to him prior to petitioning the Supreme Court for a rule change.

On January 26, 1984, the Board of Bar Commissioners, in light of Jones' petition to the Supreme Court of Alabama, changed its mind and formally recommended to the Supreme Court, *inter alia:*

Our Committee met and deliberated at length. It has studied every available rule in other jurisdictions in which the code permits electronic media advertising. The Committee made an extensive report to the Board of Bar Commissioners. Following that report, the Board of Bar Commissioners would recommend to the Court amendments to the Code of Professional Responsibility of the Alabama State Bar relative to DR 2 thereto to provide for the inclusion of electronic media advertising.

On February 9, 1984, the Alabama Broadcasters Association filed with the Supreme Court of Alabama an *amicus curiae* brief in support of Jones' petition. This brief discussed most, if not all, of the judicial decisions bearing on the subject of electronic media advertising by lawyers.

On April 2, 1984, the Supreme Court of Alabama published a notice in the Southern Reporter of a proposed revised rule to permit electronic media advertising and set a public hearing to be held on June 11, 1984, before the Court.

On June 5, 1984, the Federal Trade Commission filed with the Supreme Court of Alabama materials on the subject of the public hearing as advertised, including an *amicus curiae* brief which had been filed by the FTC with the Supreme Court of Iowa, and drawing particular attention to proposed changes in the ABA Model Rules.

The Board of Bar Commissioners and a special committee of the Bar entitled "Task Force To Evaluate Advertising And Solici-

tation In Alabama Of The Alabama State Bar" presented voluminous materials to the Supreme Court of Alabama bearing in depth on the proposed rule change.

Prior to the public hearing which was held on June 11, 1984, several Alabama lawyers filed statements with the Supreme Court of Alabama setting forth their differing positions respecting the proposed rule change. Norris was not among them.

On October 25, 1985, the Supreme Court of Alabama amended the Code of Professional Responsibility of the Alabama State Bar insofar as here pertinent, so that the here pertinent rules thereafter read:

Temporary DR 2-102, Advertising

Any lawyer who advertises concerning legal services shall comply with the following:

(A) Subject to the requirements of Temporary DR 2-101, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, outdoor displays, radio, *television,* or written communication not involving solicitation as defined in Temporary DR 2-103. (emphasis supplied).

\* \* \* \* \* \*

(E) *No communication concerning a lawyer's services shall be published or broadcast unless it contains the following language as an integral and prominent part of the presentation: "No representation is made about the quality of the legal services to be performed or the expertise of the lawyer performing such services."* (emphasis supplied).

All of the procedures which Jones employed, and by which he succeeded in obtaining the above noted change in the Disciplinary Rules, were clearly made available by the Rules of the Alabama State Bar and by the laws of Alabama.

On December 13, 1985, Norris, without having invoked or having attempted to invoke any remedy or procedure available to him under the Alabama State Bar Rules or the laws of Alabama, filed his complaint in this court invoking 42 U.S.C. § 1983 and charging the Board of Bar Commissioners and its Disciplinary Commission with a potential deprivation under color of law of Norris' right to freedom of speech in that the Disciplinary Commission allegedly could be expected to enforce Temporary DR 2-102(E), which Norris alleged to constitute an unconstitutional prior-restraint in light of Norris' intention to run a television advertisement which he feared would not comply with Temporary DR 2-102(E). *Inter alia,* Norris' complaint contained the following paragraphs attacking Temporary DR 2-102(E):

22. Temporary DR 2-102(E) serves no legitimate state purpose and is an unconstitutional restriction upon the plaintiff's First Amendment right to engage in free commercial speech.

23. Temporary DR 2-102(E) represents the most, rather than the least, restrictive alternative for accomplishing any legitimate state interest in protecting consumers from false and misleading advertising. The message which it requires lawyers to give the public "as an integral and prominent part of the presentation" is so intrusive that it takes over the ad and becomes its focal point, thereby leaving minimal room for the advertising message itself.

24. Temporary DR 2-102(E) is a mere subterfuge to discourage lawyers from advertising.

25. Temporary DR 2-102(E) is itself false and misleading because every advertisement contains a qualitative statement about the product or service which it promotes.

26. Temporary DR 2-102(E) vitiates the effect of lawyer advertising by requiring attorneys to tell the public that they are not good lawyers.

27. Temporary DR 2-102(E) impedes rather than advances the flow of truthful, accurate, and useful information to consumers.

28. Temporary DR 2-102(E) requires that the so-called disclaimer be "an integral and prominent part" of each adver-

tisement. This requirement is unconstitutionally vague and violates the Due Process Clause of the Fourteenth Amendment, because reasonable lawyers would differ about the extent to which the required language must be a part of an ad. Plaintiff is unable to determine precisely what he is required to do to conform his behavior to the law.

In his prayer for relief Norris sought an injunction against defendants which would prohibit any enforcement of Temporary DR 2–102(E); sought a judicial determination that Temporary DR 2–102(E) is unconstitutional as violative of the First and Fourteenth Amendments; and sought a judicial determination that that portion of Temporary DR 2–102(E) "which requires that the so-called disclaimer be 'an integral and prominent part' of each ad is unconstitutionally vague and violates the Due Process Clause of the Fourteenth Amendment because reasonable lawyers would differ about the extent to which the required language must be a part of the ad".

Not only did Norris not have a grievance filed against him by the Disciplinary Commission for his T–V advertisement, but no other lawyer in Alabama has ever had a grievance filed against him, or any disciplinary action taken against him, for any alleged violation of Temporary DR 2–102(E), either for a television ad not containing the disclaimer or for a television ad not having the disclaimer as "an integral and prominent part of the presentation". In fact, the Disciplinary Commission in interpreting Temporary DR 2–102(E), as adopted by the Supreme Court on October 25, 1985, consistently thereafter held that if the disclaimer were "legible" it was automatically deemed to be an "integral and prominent part of the presentation". Therefore, Norris' fear of discipline was more theoretical than real. Furthermore, Norris actually ran his proposed television ad before the conclusion of this action and, as stated, has not been in any way threatened by defendants with discipline.

If Norris had presented his proposed ad to the appropriate committee of the Bar, as Jones had done earlier, the ad would doubtless have been approved under Temporary DR 2–102(E) without any revision of the ad or of the Rule. Rule 14, Rules of Enforcement of the Alabama State Bar, provides in pertinent part:

> If an attorney, prior to the time he engages in conduct which is later made the subject of a disciplinary action, makes a full and fair disclosure, in writing, to the General Counsel, of the action he proposes to take, and receives a written opinion of the General Counsel, concurred in by the Disciplinary Commission, that the proposed conduct is permissible, this shall be a defense to a disciplinary action. .

If, instead of filing his complaint in this court, Norris had pursued the approach taken by Jones, he could and would ultimately have obtained the favorable ear of the Supreme Court of Alabama even if the Disciplinary Commission as an act of aberrational behavior had not approved his proposed T–V advertisement.

On December 27, 1985, the General Counsel of the Alabama State Bar wrote a memorandum to the Supreme Court of Alabama informing the Court of Norris' complaint pending in this court and suggesting a rule clarification. That memorandum said in pertinent part:

> Re: *Robert McKim Norris, Jr. v. Edward P. Turner, et al.*

> Suit has been filed against the members of the Board of Commissioners of the Alabama State Bar in the above-styled suit, challenging the constitutionality of Temporary DR 2–102(E).

> Temporary DR 2–102(E) presently provides:

> "No communication concerning a lawyer's services shall be published or broadcasted unless it contains the following language *as an integral and prominent part of the presentation:* 'no representation is made about the quality of the legal services to be performed or the expertise of the lawyer performing such services.'" (emphasis in original).

Paragraph 23 of the complaint in the above-styled suit in part provides:

"The message which it requires lawyers to give the public 'as an integral and prominent part of the presentation' is so intrusive that it takes over the ad and becomes its focal point, thereby leaving minimal room for the advertising message itself".

Paragraph 28 of an amended complaint provides:

"Temporary DR 2–102(E) requires that the so-called disclaimer be 'an integral and prominent part' of each advertisement. This requirement is unconstitutionally vague and violates the Due Process Clause of the Fourteenth Amendment, because reasonable lawyers would differ about the extent to which the required language must be part of a ad. Plaintiff is unable to determine precisely what he is required to do to conform his behavior to the law".

Without conceding the validity of the plaintiff's contention as set forth in paragraph 28 of the amended complaint, the plaintiff has raised a justiciable issue which must be resolved by the United States District Court.

It is suggested that Temporary DR 2–102(E) be forthwith amended to read as follows:

"No communication regarding a lawyer's services shall be published or broadcast unless it contains *in legible and/or audible language the following:* 'no representation is made about the quality of the legal services to be performed or the expertise of the lawyer performing such services.'" (emphasis supplied).

The words "in legible and/or audible language" are more definitive and less restrictive than the words "an integral and prominent part of the presentation" and would not alter the effectiveness of the Rule or change the intent and purpose of the Board of Commissioners of the Alabama State Bar in recommending or the Supreme Court of Alabama in promulgating said Rule and would effectively eliminate the issue raised in the pending law suit.

On January 6, 1986, the Supreme Court routinely adopted the Rule change suggested by the Alabama Bar.

On January 9, 1986, Norris, after having obtained leave of court, amended his complaint to acknowledge the January 6 amendment of Temporary DR 2–102(E) by the Supreme Court of Alabama, but alleged with respect to the rule as thus amended:

30. The revised Temporary DR 2–102(E) still suffers from the constitutional defects noted in this complaint, except for those related to the words "integral and prominent part".

31. Revised Temporary DR 2–102(E)'s use of the term "and/or" is ambiguous and unconstitutionally vague. *The American Heritage Dictionary of the English Language* defines "and/or" as follows:

Used to indicate that either *and* or *or* may be used to connect words, phrases, or clauses depending upon what meaning is intended. (emphasis in original). Since plaintiff does not know "what meaning is intended" by "and/or" the use of the term does not assist him in understanding.

The amendment in no way retreated from the original broad attack on the rule.

On January 17, 1986, without again amending his complaint, Norris abruptly filed a motion to dismiss his action "without prejudice", reciting expressly that defendants had refused to pay plaintiff's attorney's fees and further reciting that the proposed dismissal was without defendants' consent. In fact the motion clearly showed that plaintiff's counsel had tried to negotiate a consent settlement with defendants, including attorney fees, but had met a stone wall.

On January 21, 1986, the court granted plaintiff's motion to dismiss "without prejudice". The court expressly taxed the costs against plaintiff. Plaintiff has filed no post-judgment motion to retax costs or to alter the final decree in any way. Neither has he taken an appeal from the final de-

cree. The only post-judgment action he has taken is to file his application for attorney's fees based upon his claim that his complaint was the catalyst or proximate cause of the change made by the Supreme Court of Alabama in Temporary DR 2–102–(E) on January 6, 1986, a fact which he now alleges to have provided him "substantial relief", an allegation contrary to the tenor and thrust of his last amended complaint.

During the hearing on the question of Norris' entitlement to attorney's fees and expenses pursuant to 42 U.S.C. § 1988, Norris' testimony was that his interest in broadcasting the proposed T–V advertisement was much more a matter of the economics of the law practice than representative of any desire on his part to exercise what might be described as the Founding Fathers' concept of freedom of speech. In other words, as expressed in the complaint itself, his interest was limited to an insistence that his right to "commercial speech" was infringed both prior to and after January 6, 1986. But then after January 6, 1986, he apparently felt sufficiently comfortable with the situation to decide to direct his counsel to dismiss his complaint. He had received some personal criticism as a result of his T–V commercials, criticism protected, of course, as much by the First Amendment as his own commercial speech. This criticism may have been the reason or a reason for his decision to reject his counsel's advice and to throw in the towel.

## CONCLUSIONS OF LAW

Based on the foregoing facts the court reaches certain conclusions.

The court has jurisdiction to wind up this case by ruling on the outstanding claim for attorney's fees and expenses under 42 U.S.C. § 1988 in a case brought under 42 U.S.C. § 1983.

Plaintiff's theory of entitlement under 42 U.S.C. § 1988 is that his complaint was the catalyst or proximate cause of the Supreme Court of Alabama's amendment to Temporary DR 2–102(E) and that he therefore obtained substantial relief and should be considered the "prevailing party".

The most recent appellate expression on the subject here under consideration comes from the Tenth Circuit in *Supre v. Ricketts*, 792 F.2d 958 (10th Cir.1986). *Supre* not only discusses all of the pertinent Supreme Court decisions but favorably cites *Miami Herald Publishing Co. v. City of Hallandale*, 742 F.2d 590 (11th Cir.1984), and *William v. Leatherbury*, 672 F.2d 549 (5th Cir.1982), the latter standing for the proposition that a plaintiff is not "prevailing" for purposes of § 1988 if the actions taken by defendants during the pendency of the suit were gratuitous and were not legally required of them. *Miami Herald* will be examined in more detail *infra*. *Supre* involved a claim for fees in a § 1983 action where none of the requested relief was judicially obtained. The § 1988 issue came up on appeal from a lower court's award of fees to plaintiff after his complaint had ostensibly been mooted by certain actions taken by defendants. The Tenth Circuit holds:

> ... a plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. A plaintiff may prevail in the absence of a judicial determination or full litigation. *Maher v. Gagne*, 448 U.S. 122, 129 [, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653] (1980). The test for determining whether a plaintiff is a prevailing party when there has been no adjudication was recently set forth in *J. & J. Anderson*, [*v. Town of Erie*] 767 F.2d [1469] at 1475, and *contains two elements which must be satisfied. The plaintiff must demonstrate that his lawsuit is linked causally to the relief obtained, i.e. the suit must be a "substantial factor or a significant catalyst" in prompting the defendants to act or cease their behavior. He must also demonstrate that the defendants' conduct in response to the lawsuit was required by the Constitution or federal law, i.e. the defendants' actions must be legally required.* (emphasis supplied).

792 F.2d 962.

The Tenth Circuit goes on to conclude that the district court's finding that Supre's law

suit was causally linked to the actions taken by defendants was so tenuous as to be clearly erroneous. The Tenth Circuit further concludes that the actions there taken by defendants were not legally required of them. In reversing the district court the Tenth Circuit finds, then, that the plaintiff failed as to both prongs of the inquiry.

The leading cases on point in the old Fifth and in the Eleventh Circuits are *Iranian Students Association v. Sawyer*, 639 F.2d 1160, 1163 (5th Cir.1981); *Robinson v. Kimbrough*, 652 F.2d 458, 466 (5th Cir. 1981); *Fields v. City of Tarpon Springs*, 721 F.2d 318, 321 (11th Cir.1983); and *Miami Herald Publishing Co. v. City of Hallandale, supra*. In *Fields* the Eleventh Circuit simply and obviously holds:

> As a matter of law one may prevail for purposes of [§ 1988] even though the action was voluntarily dismissed.

721 F.2d 321.

In *Miami Herald* the Eleventh Circuit elaborates:

> In determining whether Miami Herald is a prevailing party, "the proper focus is whether the plaintiff has been successful on *the central issue*"; "a prevailing party need not have prevailed on all the issues; it is sufficient that plaintiffs prevail on *the main issue*". [citing cases] (emphasis supplied).

In the first place Norris did not prevail, even indirectly, on his *main issue*. Simply labeling something after-the-fact as the "main issue" does not make it the main issue. Any fair analysis of Norris' complaint as compared with the crumb the Supreme Court of Alabama handed him cannot lead to the conclusion that he won on his main issue. In this court's opinion Norris' main complaint was about the required disclaimer, a disclaimer which is still required.

The Eleventh Circuit applies the two prong test, as does the Tenth Circuit, in order to ascertain whether or not a plaintiff can be said to have "prevailed" without formally obtaining any relief whatsoever, "main" or "secondary" or "tertiary".

■ But before applying this two prong test, the court will join defendants in an interesting exercise and explore defendants' alleged distinction between "commercial speech" and other kinds of speech with the possible implication of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Commercial speech admittedly has many of the attributes of a "property interest". The crucible of political and social dialogue cannot be much disturbed by the absence or presence of a lawyer's T–V ad. A lawyer's interest in advertising, and Norris' interest, is very close kin to, if not identical with, the property right to a job which in § 1983 cases under *Parratt* forecloses access to the federal courts if there is an adequate state remedy for the deprivation of the "property interest". In Norris' situation he certainly had an adequate state method of redress, both pre-deprivation and post-deprivation. No court has directly addressed the possible preclusive effect of *Parratt* if Norris' only interest is in enhancing his professional income and not considered to be a "liberty interest". Yet, the stretch of the First Amendment is broad, and this court therefore must reject the *Parratt* defense.

■ Again, before applying the two prong test, the court finds that Norris, although not precluded by *Parratt*, is precluded from claiming attorney's fees for another reason unrelated to the two prong inquiry. When Norris amended his complaint *after* the Supreme Court of Alabama had amended Temporary DR 2–102(E), he expressed complete dissatisfaction with the rule as thus amended. He uttered no cry of victory. Instead, he found no redeeming feature in the amended rule and alleged it still to be unconstitutional for the very same reasons previously cited in his attack on the former rule. In this court's opinion Norris' complaint, as amended after he had received all the "relief" he now claims as justification for an attorney's fee, constituted a clear admission by him that the incidental "relief" which he may have obtained was not truly significant and is wish-

ful thinking by hindsight. It was certainly not the "main relief" he sought. He himself described it as totally inadequate. The change of heart manifested in his § 1988 application may be understandable, but it is not persuasive. Further confirming his confession of official unhappiness with the final result, Norris sought and obtained a dismissal *"without prejudice"*. Defendants consented to nothing. This necessarily implies that Norris obtained no favorable result whatsoever as a result of the litigation, because he reserves the right to seek precisely the same judicial relief at a later time. This is hardly the position which a "prevailing party" takes. The truth is that Norris got not a half-a-loaf from the defendants nor from the Supreme Court of Alabama. If he got even a slice it was a very thin slice. It certainly was not vindication on the "main issue" as required by *Miami Herald.* Thus, even before applying the two prong test the court finds that Norris cannot be heard to claim status as the "prevailing party" for purposes of § 1988.

■ There is a second reason outside the two prong test why plaintiff cannot receive an award of attorney's fees. The court *expressly taxed the costs of the case against Norris,* and he has not attempted to challenge that ruling. Rule 54(d), F.R. Civ.P., governs the taxation of costs in civil cases. The general rule is that only prevailing parties are entitled to costs. *See, e.g., Hohensee v. Basalyga,* 50 F.R.D. 230 (M.D.Pa.1969); *Hayman v. Morris,* 37 N.Y. S.2d 884, 891, 892 (1942); *Livesley v. Strauss,* 104 Or. 356, 207 P. 1095 (1922); and *Ratliff v. Ratliff,* 193 Ky. 708, 237 S.W. 397, 401 (1922). While the Eleventh Circuit in *Dowdell v. City of Apopka,* 698 F.2d 1181 (11th Cir.1983), holds that the limitations of Rule 54(d) as to the items recoverable as expenses do not necessarily apply when dealing with § 1988, *Dowdell* and other cases like it *do not confront the implications inherent in the taxation of costs after a voluntary dismissal without prejudice* under Rule 41(a)(2), F.R.Civ.P., as in the instant case. Rule 41(a)(2) does not permit a dismissal without prejudice

"at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper". By taxing the costs against plaintiff this court clearly indicated that it deemed the dismissal proper only without any costs being taxed against defendants. Necessarily, this included attorneys fees and expenses. Where Rule 41(a)(2) is successfully invoked by a plaintiff, as here, the defendant is deemed to be the "prevailing party" unless expressly provided otherwise. *See* 6 *Moore's Fed.Prac.* ¶ 54.70[4]. Also *see, e.g., Corcoran v. Columbia Broadcasting System, Inc.,* 121 F.2d 575 (9th Cir.1941). The clinching argument on the point is found in § 1988 itself, which provides in pertinent part:

... The court, in its discretion, may allow the prevailing party, other than the United States, *a reasonable attorney's fee as part of the costs.* (emphasis supplied).

The English language and common logic dictate that if *the* costs are taxed *against* a party, very substantial costs cannot also be taxed against the opposing party, that is, unless there is a retaxation of costs. In the present posture of this case, even if the court wished to do so, it could not grant belated "prevailing party" status to Norris. The issue as to who "prevailed" has been adjudicated and has become the law-of-the-case.

There is one last thought which occurs to the court before it gets around to the inevitable discussion of the two prong test. The thought arises as the result of a recent reading of *Evans v. Jeff D.,* — U.S. —, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), in which the Supreme Court approves the implementation of a settlement agreement which denied fees to the prevailing plaintiffs under § 1988. While the *Evans* case is in many respects dissimilar to Norris' case, it has a striking similarity. In *Evans* the plaintiffs' attorney waived his fee in order to avoid the conflict of interest inherent in negotiating a settlement of the attorney's fees and of the main relief simultaneously. From Norris' motion to dismiss it is apparent that defendants here refused

either to acknowledge that plaintiff had prevailed or to agree to attorney's fees, although plaintiff's attorney had sought to obtain a "joint motion to dismiss" or consent decree. The Supreme Court holds:

Plaintiff, Johnson [the attorney] had no *ethical* obligation to seek a statutory fee award. His ethical duty was to serve his clients loyally and competently. (emphasis the Court's)

106 S.Ct. 1537, 1538.

While this court is certainly not suggesting any ethical impropriety by Norris' highly ethical and competent counsel, it is pointing out that the dismissal here was insisted upon by Norris himself over his attorneys' advice. His attorneys, of course, honored their client's wishes as they were required to do, but continued in the quest for fees.

*Applying the Two Prong Test*

(1) *Was what defendants did pending the suit legally required of them?*

(2) *Was the mere pendency of Norris' law suit the proximate cause of the interim action which defendants and the Supreme Court of Alabama took?*

*The First Prong*

The first prong of the two prong test seems to require this court to hypothesize what it would have decided if it had fully tried the case, heard all the evidence and there had been no voluntary dismissal. This is a difficult, if not an impossible, task, because the court has not heard the evidence which would have been introduced in a full scale hearing. In this inquiry the burden is clearly upon the plaintiff to show by a preponderance of the evidence that the relief in the form of the amended Temporary DR 2–102(E) was legally due by defendants and would have been ordered by this court. The words "legally required" must be read in the context of the law suit itself. "Legally required" necessarily means "legally required *of the defendants*". These are exactly the words of *Supre v. Ricketts, supra,* where the Tenth circuit says that "the *defendants'* actions must be legally required". In Nor-

ris' case the Supreme Court of Alabama *was not a defendant.* This court in this case could not have granted any relief in the form of an order requiring the Supreme Court of Alabama to amend its Disciplinary Rules. Even speculating for the sake of the discussion that in some other case the Supreme Court of Alabama could have and would have been ordered by a federal court to amend its Temporary DR 2–210(E) as it did on January 6, 1986, there is no rational way to conclude that such relief could or would have been granted *in this case.* Plaintiff never even prayed for an injunction ordering defendants to petition the Supreme Court of Alabama for a particular rule change, or for any rule change. This means, of course, that this court could not have ordered defendants to do what they in fact did, because relief in that form was never requested. Classically a plaintiff doesn't get what he doesn't ask for, and he would not have gotten it here.

While tempted respectfully to decline to speculate as to how the court would have ultimately ruled upon a full scale trial, the court does venture to express the belief that Norris' constitutional attack on the Temporary DR 2–102(E) for vagueness could have been adequately defended by the Bar not only semantically but by the fact that Norris and his fellow Alabama lawyers had procedures readily available to them for obtaining a clarification of the rule if they honestly had any difficulty in understanding its language. This may not have been the "main relief" sought, but it is relief which would not have been granted.

Another interesting and provocative question bearing on "what might have been" if there had been no voluntary dismissal is presented by *Hensler v. District Four Grievance Committee of the State Bar of Texas,* 790 F.2d 390 (5th Cir.1986), where very recently the Fifth Circuit flatly holds that a bar grievance committee, which is a state agency (as in Alabama) and statutorily mandated to investigate "any alleged ground for discipline", enjoys sovereign immunity and is not subject to a

§ 1983 action, or, in the alternative, that the federal courts should abstain from interfering with bar disciplinary procedures because "[t]hose are matters which should be presented to the grievance committee and to the state courts of Texas and not, in the first instance, to a federal court in a § 1983 suit". There is no distinction between Hensler's complaint and Norris' complaint except that Norris in one aspect presents a First Amendment prior-restraint claim whereas Hensler only presented a due process claim. Of course one aspect of Norris' complaint *does* present a due process claim. Nevertheless, whether his claim is analyzed as one for a prior-restraint on freedom of speech or as an alleged denial of due process, or as both, Norris, like Jones before him, had a perfectly adequate state forum for challenging any disciplinary action, actual or threatened, by the Alabama State Bar. In either event if the *Hensler* reasoning is applied, Norris would have not prevailed at trial.

For these reasons Norris has failed to satisfy this court by a preponderance of the evidence the first prong, namely, that he would have achieved the same or a similar result by litigating to a conclusion.

*The Second Prong*

■ The second prong is cumulative and not alternative. Norris must satisfy *both* prongs. Norris likewise fails to satisfy the second prong, namely, proof of a causal link. More important than plaintiff's failure to prove that the claimed indirect "relief" which was "granted" by the Supreme Court of Alabama would have ultimately been granted by this court, is his failure to demonstrate that the action of the Supreme Court of Alabama was the proximate result of this law suit.

To begin with it is unbecoming of Norris to claim that the Supreme Court of Alabama danced to his tune when his violin was being played in another court. The court is tempted to launch into a full blown discussion of proximate causation.

This court has not found an expression by the Eleventh Circuit as to where the burden of proof lies on this question, but in light of *United States v. N.Y., N.H. & Hartford R.R. Co.*, 355 U.S. 253, 78 S.Ct. 212, 214–15 n. 5, 2 L.Ed.2d 247 (1957), and *Coyote v. Roberts*, 523 F.Supp. 352, 356 (D.R.I.1981), this court will travel on the assumption that the burden of proof is on a defendant in a civil rights action to prove that the pendency of the complaint was not the activating or motivating factor for an action or some sort of purported "relief" which took place after the complaint was filed. From the chronology here the burden therefore should be on defendants to satisfy the court that Norris' complaint was not the proximate cause for the changing of the Disciplinary Rule. The court concludes that defendants have met this burden despite the fact that the General Counsel openly sought the change, specifically referring to Norris' pending suit. The court reaches this conclusion for several reasons. First, Temporary DR 2–102(E) as enacted on October 25, 1985, and as amended on January 6, 1986, was still clearly labeled "TEMPORARY", meaning, of course, that it was under constant and continuing reevaluation by the Supreme Court of Alabama in the light of evolving constitutional and legal professional law. The Supreme Court of Alabama, as a result of the Jones case, already had before it all of the authorities and arguments offered here by Norris. The Supreme Court was influenced by the added clout of the FTC and of the Broadcasters. For aught appearing the action taken by the Supreme Court, while admittedly taken after being advised of the claims made by Norris in this action, would have been taken anyway, and this court finds that the amendment of January 6, 1986, or one very much like it, was inevitable without regard to Norris' suit. Secondly, as a practical matter the action taken by the Supreme Court on January 6, 1986, was no more than a codification of the interpretation already being given by the Disciplinary Commission to Temporary DR 2–102(E) as previously enacted on October 25, 1985. At most the change of January 6, 1986, was no more than a clarification. It certainly was not

an 180 degree turn or a retreat by the Supreme Court or by defendants out of fear of federal court intervention in response to Norris' suit. Rather, it was an honest attempt by defendants to obtain a clarification, as opposed to an admission of guilt by defendants, and when the General Counsel addressed the Supreme Court with the words, "without conceding the validity of the plaintiff's contention", defendants' counsel simply meant what he said while manifesting a spirit of cooperation and helpfulness. Defendants never conceded that plaintiff had them on the run, and they need not have done so.

If this court were left only with the General Counsel's letter of December 27, 1985, to the Supreme Court of Alabama, Norris' argument of a causal link (except for the fact that the Supreme Court *is not here a defendant*) would be a strong one, because it is susceptible to being interpreted as proof that the Supreme Court simply echoed the wishes of the defendants, very much like Pavlov's dog predictably reacts to certain stimuli. Proof positive that this is not the case comes from *Ex Parte Howell*, 487 So.2d 848 (Ala.1986), decided on March 31, 1986, by a unanimous court. In *Howell* the Supreme Court of Alabama clearly demonstrates that it has a mind of its own and that it understands the First Amendment in the context of lawyers' advertising better than the Alabama State Bar does, and perhaps better than this court does. The Alabama Court there found that a proposed lawyer advertisement, if prohibited, would constitute a violation of that lawyer's freedom of speech and ordered the Bar to draft a proposed rule change to accommodate to present-day First Amendment requirements. This is exactly what Norris could and would have accomplished without having to file his complaint in the federal court. It would be highly presumptuous of this court to hold that the Supreme Court of Alabama only reacted as it did on January 6, 1986, because it had this court breathing down its neck, and this court declines to do so.

A convincing factual basis for the second prong does not exist in this case.

*Recapitulation*

To recapitulate, it is appropriate to track the actual claims in Norris' complaint and to compare them with what he "got" by happy accident in the Supreme Court of Alabama. In paragraphs 22 through 28 of his complaint as first amended, he charged that Temporary DR 2–102(E) serves no legitimate state purpose; that it constitutes an unconstitutional restriction upon his First Amendment right; that it represents the most rather than the least restrictive alternative for accomplishing any legitimate state interest in protecting consumers from false and misleading advertising; that it is so intrusive as to take over the ad and become its focal point, leaving minimal room for the advertising message itself; that it is a mere subterfuge to discourage lawyers from advertising; that it is itself false and misleading; that it vitiates the effect of lawyer advertising by requiring attorneys to tell the public that they are not good lawyers; that it impedes rather than advances the flow of truthful, accurate, and useful information; and that it is unconstitutionally vague and therefore violates the Due Process Clause. The amendment filed by Norris after the Supreme Court's action of January 6, 1986, did not retreat from a single one of these assertions. Yet, not any defendant, not the Supreme Court of Alabama, and not this court ever agreed with a single one of these assertions. Simply put, plaintiff achieved neither vindication in a theoretical sense nor anything of tangible value. If he can be said to have indirectly or tangentially obtained something of value it is so miniscule and so speculative as to form no basis for a § 1988 claim for attorneys fees.

Under the circumstances, and for the separate and several reasons discussed above, plaintiff's request for the taxation of attorney's fees and costs against defendants under 42 U.S.C. § 1988 will be denied. A separate appropriate order will be entered.